Laura D. Mott *et al.*

*v.*

The Danville Seminary *et al.*

*Filed at Springfield June 15, 1889.*

1. Corporations—*powers—limited by charter.* A corporation has no powers other than those expressed in its charter, and such incidental powers as are necessary to carry into effect those specifically conferred.

2. Same—*reverter of property—upon dissolution of corporation.* The title of a corporation to property owned by it ceases to exist when the corporation ceases to exist; and hence it was held, at common law, that upon the dissolution or civil death of a corporation, all its real estate remaining unsold reverted back to the original grantor or his heirs.

3. This rule of the common law, however, has been modified in modern times, in respect to corporations organized for pecuniary profit. In respect to such corporations, the shareholders are the original donors of the corporate property, each member contributing his share of the capital for the common benefit of all; and the corporation, so long as it remains solvent, will hold the property given it, merely as trustee for its shareholders. When such a corporate body is dissolved or becomes insolvent, equity will see that its property is distributed, first to the payment of its debts, and next among its stockholders.

4. But in the absence of statutory regulations to the contrary, the doctrine of reverter to the original owner or his heirs, in case of corporate dissolution, is applicable at this day to public and eleemosynary corporations, even in the view of a court of equity.

5. Same—*reverter—as to property alienated before dissolution.* This common law rule of reverter applies, by its terms, only to such legal right or title as is in the corporation at the time of its dissolution, and not to such as has been previously alienated by the act of the corporation. The reverter to the original grantor or his heirs will be defeated by the alienation of the fee before dissolution of the corporation.

6. Same—*diverting donation to wrong uses—in case of a gift with or without condition—under act of 1849.* By section 6 of the act of 1849, for the incorporation of institutions of learning, a corporation organized thereunder was obliged to apply any donation made to and accepted by it, "in conformity with the express conditions of the donor." A conveyance of land as a donation to a seminary formed under the act, was for the building and maintaining thereon such an institution of learning as was provided for in the act: *Held,* that if, under the condition in the deed, the corporation was to build and maintain an

institution of learning upon the land, it had no power to dispose of the land to private parties, to be used for other purposes.

7. But even if the conveyance to the seminary were an absolute gift, without conditions, the land could not be disposed of, under section 4 of that act, except for the use of the institution formed thereunder, and in such manner as should seem most beneficial thereto. A conveyance by the corporation to private persons after it had ceased to maintain an institution of learning, and on the eve of a judgment of forfeiture of its corporate rights, not intended to be for its use or benefit, can not be sustained, for want of power to make the same.

8. Same—*deed by a corporation—its execution and authentication— and by whom.* The mode of assenting to and authenticating the act of a corporate body which uses a seal, is to affix the seal, with a declaration that it is the seal of the corporation, and to verify the act by the signatures of the president and secretary. A deed of a corporation having a seal, without being authenticated as required by law, is a nullity, and confers no rights.

9. The president and secretary of the board of trustees of an institution of learning have no power to make a deed of the corporate property, unless authorized to do so by the board of trustees.

10. · Condition subsequent—*non-performance—how the estate to be defeated.* A non-compliance with a condition subsequent does not, of itself, determine the estate, as the right to enforce a forfeiture may be waived. Notwithstanding the breach, the estate abides in the grantee until it is defeated and determined, at the election of the grantor or his heirs. This election may be signified by a re-entry, or by some act equivalent to a re-entry.

11. Where a corporation holding land under a deed containing a condition subsequent, is dissolved for acts or omissions, which are also breaches of the condition, the title will revert to the original donor without any act on his part, and no re-entry or other act equivalent thereto need be shown. The dissolution of the corporation by judicial decree or judgment, supersedes the necessity of any re-entry or other equivalent act.

12. In this case, the owner of land conveyed the same to the board of trustees of a corporation organized under the act of 1849, for the incorporation of institutions of learning. The deed was without consideration, and was a mere gift to the corporation, "for the building and maintaining on said grounds an institution of learning, as provided by said law," etc.: *Held*, that the deed was made upon a condition subsequent, that the board should maintain upon the land an institution of learning, in accordance with the provisions of the act of 1849.

13. The effect of such deed was to vest a fee simple estate in the board, subject to be defeated by their non-compliance with the con-

dition, and by the action resulting from such non-compliance, which is provided in section 12,—that is, a proceeding on behalf of the State to declare a forfeiture of all the rights and privileges secured by the act.

14. Partition—*settling questions of title.* Where the court obtains jurisdiction of a proceeding for the partition of land, it is authorized by the statute to proceed to settle questions of controverted title between the parties, and to vest titles by its decree. It may also remove clouds upon the title to the premises, even though the defendants holding adversely under such clouds are in possession of the property.

Appeal from the Circuit Court of Vermilion county; the Hon. Edward P. Vail, Judge, presiding.

Mr. R. D. McDonald, and Mr. W. R. Lawrence, for the appellants :

On the dissolution of a corporation its lands revert to the grantor, but he must make re-entry. Coke on Littleton, 13 b ; 2 Blackstone's Com. 256 ; *Life Association* v. *Fassett,* 102 Ill. 315 ; *Bank* v. *State,* 1 Blackf. 282 ; *Bingham* v. *Windermox,* 2 Com. 509.

The only lawful way the dissolved corporation could have conveyed, was pointed out in section 4 of its charter, namely, for the use of said institution, in such manner as should be most beneficial thereto.

The powers given the corporation must be construed with reference to the objects in view in creating it. Angell & Ames on Corp. (10th ed.) sec. 110 ; *Betts* v. *Menard,* 1 Breese, 398 ; *Fitch* v. *Pinckard,* 4 Scam. 78 ; *Metropolitan Bank* v. *Godfrey,* 23 Ill. 602 ; *Webster* v. *People,* 98 id. 347 ; *Petersburg* v. *Mappin,* 14 id. 193 ; *Kinzie* v. *Chicago,* 1 Scam. 187.

In *Abbott* v. *American Hard Rubber Co.* 33 Barb. 592, the court held that "corporations have no power to alienate property necessary for their business."

The common seal of the corporation was not affixed to the pretended deeds ; nor did the board of trustees, managers or directors of the corporation authorize the deeds to be made. *Wilcox* v. *Kinzie,* 3 Scam. 188.

Such power as the dissolved corporation had to convey under its charter, could be exercised only by the corporation, or by an agent especially authorized by it. The president, appointed under section 8, had no such power by virtue of his appointment; nor could he and the secretary, unless especially authorized by the corporation, make such conveyances. Angell & Ames on Corp. secs. 231, 232, 277-280.

The instruments are only *prima facie* deeds of the corporation, and we may show that they are not its deeds. *Koehler* v. *Black River Co.* 2 Black, 715; *Phillips* v. *Coffee,* 17 Ill. 157.

Mr. J. B. MANN, for the appellee the Danville Seminary:

A court of equity has no jurisdiction to remove a cloud when the holder thereof is in the adverse possession of the land,—and this rule can not be evaded by proceeding for partition. Partition is not intended as an alternative remedy with ejectment. Freeman on Co-tenancy, sec. 447.

It is conceded that, by the strict rule of the common law, upon the dissolution of a corporation its real estate reverted to the grantor from whom it was acquired. The rule gave to the grantor an interest in the land not equal to a reversionary interest, which is a vested estate, but a conditional estate, which is named a "possibility of reverter." It was this kind of an estate which was held by Melissa B. Lamon at the time the proceedings were begun to dissolve the old seminary corporation, and at the time said corporation conveyed the property to Phillips and Abdill, the grantors of this appellee. Such an estate, if it may be so named, invested the grantee with the power of alienation in fee simple, and by such alienation to cut off and extinguish the possibility of reverter.

So long as the estate in fee remains, the owner in possession has all the rights in respect to it which he would have if tenant in fee simple, unless it be so limited that there is properly a reversionary right in another, something more than a

possibility of reverter belonging to third persons.  1 Washburn on Real Prop. 63.

Moreover, the rule of the common law, referred to, was only operative as to such real estates the legal title to which remained in the corporation at the moment of its dissolution, and not to such as, by the act of the corporation or the act of law, had been previously alienated.  Morawetz on Corp. sec. 600; Angell & Ames on Corp. sec. 195; 2 Kent's Com. 282.

Conveyance by a corporation prior to its dissolution was one of the recognized means of preventing a reverter at common law.  2 Kent's Com. sec. 282; 2 Preston on Estates, sec. 50.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This case was heard upon demurrer to the bill.  The demurrer was sustained and the bill was dismissed.  Therefore, in considering the questions involved, the allegations of the bill are assumed to be true.

The complainants below, who are the appellants here, claim to be the owners of an undivided one third part of the real estate, described in the bill, and of which they ask for a partition.  They allege that their interest was conveyed to them, on March 21, 1888, by Melissa B. Lamon, who is claimed to have been at that time the owner in fee of the whole tract.  The appellees also derive title from Melissa B. Lamon.  Did the latter have title when she made the conveyance to appellants?

On November 15, 1850, Melissa B. Lamon and her husband conveyed the land in controversy to the Board of Trustees of the Danville Seminary, a corporation organized under an act of the Legislature of this State entitled "An Act for the incorporation of institutions of learning," approved January 26, 1849, in force April 13, 1849. (Session Laws of Ills. of 1849, page 86).  The conveyance was without consideration, and was a mere gift or donation to the Seminary "for the building and maintaining on said grounds an institution of learning, as provided by said law authorizing said incorporation."

Section 1 of said Act of 1849 provides "that any five or more persons being desirous of associating themselves for the purpose of establishing an institution of learning" may make and file a certificate in writing, stating the name, number and names of the trustees, "the particular branches of literature and science or either of them proposed to be taught, and, if said institution is to be of the rank of a college or university, the number and designation of the professorships to be established." Section 2 provides, that said persons shall be a body corporate with power to sue and be sued, etc., "to acquire, hold and convey property in all lawful ways," to have and use a seal, to make by-laws, and to confer academical or honorary degrees. By section 3 power is given to fill vacancies and to "hold the property of said institution solely for the purposes of education and not for the individual benefit of themselves," etc. Section 4 provides, that the corporation so formed "shall be competent in law and equity to take to themselves in their corporate name real, personal or mixed property by gift * * * conveyance, will * * * and the same estate to grant, bargain, sell, convey * * * or otherwise dispose of the same, for the use of said institution, in such manner as shall seem most beneficial thereto." By section 5 the trustees are required to apply the funds of the institution to in erecting suitable buildings, supporting instructors, etc., and procuring books, charts, apparatus, etc., "necessary to the success of said institution." Section 6 is as follows: "In case any donation, devise or bequest shall be made for particular purposes accordant with the designs of the institution * * * and the corporation shall accept the same, such donation, devise or bequest shall be applied in conformity with the express conditions of the donor or devisor." Section 7 limits the number of acres of land that may be held to 1000. Section 8 confers the power to appoint and displace the president and professors, "and to prescribe and direct the course of studies to be pursued." Section 9 provides for the giving of bonds by the

treasurer and other agents. Section 10 specifies the mode of serving process upon the corporation. Section 11 requires the trustees to file in each year with the Secretary of State and recorder a statement of the officers of the institution, with an inventory of its property and liabilities, the number of students, etc. Section 12 provides that, upon a violation of the provisions of the act or a failure to comply with the same, upon complaint to the Circuit Court, "a writ of *scire facias* shall issue, and the Circuit attorney shall prosecute in behalf of the people for a forfeiture of all rights and privileges secured by this act to such corporation."

The bill avers that the incorporation in 1852 built a building upon said land and operated thereon an institution of learning, known as the "Danville Seminary," until 1858, since which time it has ceased to operate and conduct any institution of learning, and that, in February, 1877, a proceeding by *scire facias* was instituted, as provided in section 12, in the Circuit Court of Vermilion County against the Board of Trustees of Danville Seminary, who appeared therein and answered, for the purpose of dissolving and annulling said incorporation, and that, in October, 1880, a decree was entered by said court, "that said corporation be, and the same was, dissolved."

The bill further avers "that said Board of Trustees of Danville Seminary, at the time of its dissolution aforesaid, had no property, no creditors and no stockholders."

If the corporation had made no valid alienation of the land in question before the decree of dissolution was entered in 1880, such land reverted back to its original owner and donor, Melissa B. Lamon. As the act of 1849 does not direct what is to become of the property of the corporation in the event of its dissolution, the ground donated by Mrs. Lamon will be disposed of in accordance with the principles of the common law as applicable in such cases. (Rev. Stat. chap. 28.)

The title of a corporation to property owned by it ceases when the corporation itself ceases to exist, and hence it was

held, at common law, that, upon the dissolution or civil death of a corporation, all its real estate remaining unsold reverts back to the original grantor or his heirs. (1 Blackstone's Com. 484; 2 id. 256; 2 Kent's Com. 307; Angell & Ames on Corp. sec. 195 (10th ed.); 2 Morawetz on Corp. sec. 1031; *Life Ass'n of America* v. *Fassett,* 102 Ill. 315).

It is true, that this rule of the common law has been modified and changed, in modern times, by courts of equity and legislative enactments. Such modifications and changes, however, have grown up in favor of corporations organized for pecuniary profit. In regard to the latter class of corporations, the shareholders are themselves the original donors of the corporate property, each member contributing his share of the capital for the common benefit of all; and the corporation, so long as it remains solvent, holds the property given it merely as trustee for its shareholders. (2 Morawetz on Corp. sec. 1032.) When such a corporate body is dissolved or becomes insolvent, equity will see that its property is distributed, first to the payment of its debts, and next among its stockholders.

In England, the doctrine, that the real estate owned by a corporation reverts to the original owner upon its dissolution, was first applied in case of ecclesiastical and municipal corporations. The main reason for such application was that, in those cases, there were no shareholders and ordinarily no creditors, so that the property was really without an owner after the particular use, for which it had been given, had come to an end by the dissolution of the corporate body.

The reasons, which gave rise to the doctrine and originally justified its application, existed in the case of the Danville Seminary, as organized under the act of 1849, at the time when its dissolution took place. It is averred in the bill and admitted by the demurrer, that, at that time, the Seminary had no creditors and no shareholders. It is the equity in favor of creditors and shareholders, which prevents the enforcement of the rule, when it is not followed. No such equity exists in

this case, as the case is presented on the face of the bill. The Act of 1849 contains no provision for opening books of subscription, or for making or receiving subscriptions to capital stock. By its terms there were to be no stockholders, and it was evidently contemplated, that the institutions of learning therein provided for would be organized and supported by the aid of gifts and donations. The Danville Seminary, as organized under the act, was really an eleemosynary institution. In the absence of statutory regulations to the contrary, the doctrine of reverter to the original owner or his heirs in case of corporate dissolution is applicable, at this day, to public and eleemosynary corporations, even in the view of a court of equity. (Angell & Ames on Corp. (10th ed.) sec. 779 a.)

But the bill in this case alleges, that, on July 5, 1877, while the *scire facias* proceeding was pending, and before judgment was rendered therein, "William H. Brown, pretending to act as President, and Joseph G. English, pretending to act as Secretary," of The Board of Trustees of the Danville Seminary, "pretended to execute a deed of conveyance" of said land to Edwin C. Abdill and James H. Phillips, and that afterwards said Abdill and Phillips "pretended to convey said premises, by deed of quit-claim, to The Danville Seminary, a corporation organized on October 10, 1879, under the statutes of this state providing for the formation of corporations not for pecuniary profit," and the bill prays for removal of these deeds as clouds upon the title of complainants.

It is urged, however, by the present corporation known as "The Danville Seminary," one of the appellees herein, that the "possibility of reverter" to Mrs. Lamon and her heirs was cut off by the deed to Abdill and Phillips, and by their subsequent deed to the appellee Seminary. Unquestionably, the common law rule, which we have been discussing, applies by its terms only to such legal right or title as is in the corporation at the time of its dissolution, and not to such as has been previously alienated by the act of the corporation. (Angell &

Ames on Corp. sec. 195, 10th ed.)    If real property is con-
veyed to a corporation subject to no condition, it is said that
the company may transfer the same, and, in such case, the
title of a purchaser will not be affected by a subsequent dis-
solution of the corporation.    (Morawetz on Corp. sec. 1031).
Chancellor Kent thus states the doctrine : "On the dissolution
of the corporation, the reverter is to the original grantor or
his heirs ; but the grantor will be excluded by the alienation
in fee, and in that way the corporation may defeat the possi-
bility of a reverter."    (2 Kent's Com. page 282.)

The question then arises whether the instrument purporting
to have been made by the old corporation, The Board of Trus-
tees of the Danville Seminary, to Abdill and Phillips was such
a conveyance as had the effect of transferring the title.

The bill alleges that the deed to Abdill and Phillips was
without the common seal of the corporation, and that its exe-
cution was not in any manner authorized by the board of
trustees.    The bill furthermore charges, that the conveyances
to Abdill and Phillips and to the appellee, "The Danville Sem-
inary," were merely colorable, and were shifts and devices,
made use of for the purpose of defeating the reversionary right
of Mrs. Lamon, and that said conveyances were not made
"for any of the uses and purposes provided by the said act of
incorporation," but to divert the property "from the uses and
purposes expressed in said act, and from the uses and pur-
poses of said grant by Melissa B. Lamon to the Board of Trus-
tees of Danville Seminary."    It is also alleged in the bill, that
the appellee corporation, "The Danville Seminary," since the
deed to it, has leased the property to private parties, and ap-
plied the rents to the support of two churches, and is offering
the premises for sale to private persons for private uses, and
not for· use for any educational purpose whatever.

It has already been stated, that the old corporation was
empowered by its charter "to have and use a common seal."
The mode of assenting to and authenticating the act of a cor-

porate body, which uses a seal, is to affix the seal, with a
declaration that it is the seal of the corporation, and to verify
the act by the signatures of the president and secretary. In
this case the allegation of the bill, that the deed to Abdill and
Phillips was without the corporate seal, must be presumed to
be true. As it was not authenticated in the mode recognized
by the law, it was "a nullity and conferred no rights whatever."
(*Kinzie* v. *Chicago*, 2 Scam. 187). Nor had the president and
secretary of the Board of Trustees any power to make a deed,
unless they were authorized by the Board to do so. (Angell
& Ames on Corp. sec. 223, 10th ed.).

Moreover, a comparison of the allegations of the bill with
the terms of the act of 1849 will show that the old corporation
had no power to make the deed to Abdill and Phillips. A cor-
poration has no other powers than those expressed in its char-
ter, and such incidental powers as are necessary to carry into
effect those specifically conferred. (*Chicago Gas Light Co.* v.
*People's Gas Light Co.* 121 Ill. 530.) By section 6 of the act
of 1849 a corporation organized thereunder was obliged to ap-
ply any donation, made to and accepted by it, "in conformity
with the express conditions of the donor." The conveyance
of the land by Mrs. Lamon to the Board of Trustees of the
old Seminary was a donation made to them for the building
and maintaining thereon of such an institution of learning as
was provided for in the Act of 1849. If they were to build
and maintain an institution of learning upon the land, they
had no power to dispose of it to private parties to use for other
than educational purposes. (1 Redf. on Railw. ch. 11, sec.
69, paragraph 14).

Even if the conveyance of this land to the trustees be re-
garded as an absolute gift without conditions, it could not be
disposed of under section 4 of the act of 1849 except for the
use of said institution, and in such manner as should seem
most beneficial thereto; but the disposition made of it by the
deeds, which attempted to transfer it, was not intended to be

for the use of the institution located thereon, nor was the land sold or conveyed in such manner as to be beneficial to such institution, if the averments of the bill be true.

Counsel for appellants contend that the judgment of dissolution in the *scire facias* proceeding related back to the commencement of the suit, and that the attempted conveyance to Abdill and Phillips could not have the effect of defeating the reverter, because it was made by the corporation while the proceeding was pending, and for the purpose of avoiding the effect of the expected judgment. We express no opinion as to whether this be so or not. We think that the conveyance so attempted to be made was void for want of a seal, and for want of power in the grantors to make it. It did not have the effect of alienating the property, or of vesting the legal title thereto in its grantees. It follows that, the legal title being still in the corporation at the time of the dissolution, it reverted to the grantor, Melissa B. Lamon.

Counsel for appellees makes two objections to the jurisdiction of a court of equity to entertain such a bill as is filed in this case. The first objection is, that the complainants below were not in possession of the premises when they filed their bill, and, for that reason, were not in a position to ask for a removal of the deeds complained of as clouds upon their title. This objection is without force, for the reason that the bill in this case is one for the partition of land, and the court gets jurisdiction for the purpose of making partition. Having jurisdiction for this purpose, the court is authorized by our statute (Rev. Stat. ch. 106, sec. 39) to proceed to settle questions of controverted title between the parties, and to vest titles by its decree; it may also remove clouds upon the title to the premises sought to be partitioned, even though the defendants, holding adversely under such clouds, are in possession of the property. (*Henrichsen* v. *Hodgen*, 67 Ill. 179; *Gage* v. *Lightburn*, 93 id. 248; *Iberg* v. *Webb*, 96 id. 415; *Gage* v. *Bissell*, 119 id. 298). In *Gage* v. *Lightburn, supra,* the decree of the

circuit court required the defendants, who held under the tax deed, which was claimed to be a cloud upon the title, to surrender possession to the complainants, and allowed the defendants nothing for the improvements they had made upon the premises. The decree was held not to be erroneous in these particulars, because the defendants had asked no affirmative relief in respect of the matters so complained of.

The second objection urged against the jurisdiction is, that the present bill is filed for the purpose of enforcing a forfeiture, and that a court of equity always declines to lend its aid for such a purpose. We do not regard the objection as well founded, for the reason that this is not a bill to enforce a forfeiture.

It may be admitted, that the deed from Mrs. Lamon to the Board of trustees of the original seminary was made *upon condition* that the trustees should maintain upon the land an institution of learning in accordance with the provisions of the act of 1849. The condition, so contained in the deed, is known to the law as a condition subsequent. This being so, the effect of the deed was to vest a fee simple estate in the Board, subject to be defeated by their non-compliance with the condition and by the action resulting from such non-compliance, which is provided for in section 12.

It is true that non-compliance with a condition subsequent does not of itself determine the estate. The right to enforce a forfeiture for such non-compliance may be waived. Notwithstanding the breach, the estate abides in the grantee, until it is defeated and determined at the election of the grantor or his heirs. This election may be signified by a re-entry, or by some act equivalent to a re-entry. In case of a grant defeasible by condition subsequent, what remains in the grantor is the possibility of reverter, or right of entry on condition broken. At common law nothing short of an actual entry would serve to defeat an estate upon a condition which had been broken.

After breach entry was necessary to revest the estate in the original grantor.

But, in the present case, upon dissolution of the original corporation, we have already seen that the title reverted to the donor, Mrs. Lamon, without any act on her part. (Grant on Corp. 314, *304.) This being so, the complainants, who hold by conveyance from her made since the judgment of forfeiture and dissolution was rendered, can establish their title by showing such dissolution, without proving a re-entry or other act equivalent thereto. The title reverted to her by reason of the dissolution of the corporation. It is true that the proceeding, which resulted in the judgment of dissolution, grew out of and was consequent upon the breach of the condition subsequent. But such dissolution superseded the necessity of any re-entry, or other act equivalent thereto, on her part. (2 Washburn on Real Prop. (4th ed.) marg. pge. 452, and cases in notes; *M. & C. R. R. Co.* v. *Neighbors*, 51 Miss. 412; *Ludlow* v. *N. Y. and H. R. R. Co.* 12 Barb. 440; *Phelps* v. *Chesson*, 33 N. C. 194; *Tallman* v. *Snow*, 35 Me. 342; *Nicoll* v. *N. Y. and E. R. R. Co.* 12 N. Y. 121.)

If this was a bill, alleging that a condition subsequent in a deed had not been complied with, and praying for a forfeiture of the rights of the grantee on that account, the objection of counsel would have great force. But the bill for partition in the case at bar sets up, that the judgment of forfeiture and dissolution has already been rendered in a proceeding at law and by a court of law, and merely asks that the complainants may be declared to have become the owners of one third of the title, which passed to their grantor as the result of a forfeiture already had and declared.

For the reasons here stated, the decree of the Circuit Court is reversed and the cause is remanded for further proceedings in accordance with this opinion.

*Decree reversed.*

Mr. Justice WILKIN took no part.