LIDDLE v. COOK et al.

(Circuit Court of Appeals, Eighth Circuit.   November 8, 1913.)

No. 3,896.

1. QUIETING TITLE (§ 3*)—DEFENSES—ENFORCEMENT OF FORFEITURE.

A complainant held not entitled to a decree quieting his title to land, where it involved enforcing the forfeiture of a contract by which he had agreed to sell the land and had received part payment therefor, as against assignees of the contract who had paid a large advance in price therefor and had been at all times willing and able to pay the entire amount due on the contract, and had made default in payment of the installment on which the forfeiture was claimed in reliance on the representations of complainant's agents that the complainant would soon be ready to accept payment in full and execute a deed.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. § 3;  Dec. Dig. § 3.*]

2. EQUITY (§ 24*)—RIGHT TO RELIEF—ENFORCEMENT OF FORFEITURE.

While in a case otherwise properly cognizable in equity there is no insuperable objection to the enforcement of a forfeiture, in order to entitle a complainant to such relief the case made must be one the equity of which is strong enough to overcome the general indisposition of courts of chancery to aid in the enforcement of forfeitures.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 69–76;  Dec. Dig. § 24:*]

Appeal from the District Court of the United States for the District of Colorado;  Robert E. Lewis, Wm. H. Pope, and John A. Riner, Judges.

Suit in equity by Thomas R. Liddle against Clyde C. Cook and A. L. Cook.   Decree for defendants, and complainant appeals.   Affirmed.

October 26, 1906, appellant entered into a contract with C. F. Parker and B. D. Parker of Julesburg, Colo., partners, doing abstract work under the name of Parker Bros., and a real estate business under the name of the Julesburg Land Company, for the sale of a considerable body of land in the county of Sedgwick and state of Colorado.   By this contract appellant provided that the "parties of the second part should have the right, from and after this date, to sell and dispose of any of said lands to purchasers at such sums and amounts as they may be able to obtain, and upon any such sale or sales being made, the party of the first part agrees to convey said lands so sold as aforesaid upon payment to him, the said Liddle, of one dollar in cash per acre and five dollars per acre in the contracts of sale taken upon the sale of said lands, said second parties to have and reserve all the remaining part of said consideration."   Further, "that said Liddle shall make conveyances of said lands to the said parties of the second part, and their assigns as fast as purchase price of any quarter section either in money, or in money and contracts, as above provided, shall be tendered."   Further, "that the said party of the first part (Liddle) shall furnish contracts for any and all of said lands, when sold as aforesaid, or shall make conveyance by warranty deed, as the case may be and shall also furnish abstracts of title when called for as aforesaid."   At the time of the ensealing and delivery of the contract, the parties of the second part were to deposit $1,000 in the First National Bank of Julesburg, Colo.;   and it was agreed between the parties "that in case the said parties of the second part, or their assigns, fail or neglect until June 1, 1907, to comply with the terms of this contract and to complete the purchase of said lands that then and in that case the said sum of one thousand ($1,000) dollars deposited with the First National Bank, Julesburg, Colorado, as aforesaid, shall

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

be paid over to the said Liddle as liquidated damages" for such failure to perform.

On the 13th of December, 1906, following, Parker Bros. sold the S. E. ¼ of section 24, township 10 N., range 44 W., in Sedgwick county, Colo., to one John Detmer for $1,280; $480 to be paid in cash and the balance in five annual deferred payments, with accrued interest, to be made respectively on the 13th day of December in the years 1907 to 1911, inclusive; and, under his agreement with the Parkers, Liddle entered into a contract with Detmer, whereby he agreed to make to the latter a good and sufficient warranty deed upon performance of all the covenants and agreements therein contained. In this contract, among other things, it was provided that upon default in the performance of any of the covenants and agreements to be performed by Detmer, including the making of the payments aforesaid, when the same should fall due, Detmer should be deemed to have been from the beginning the tenant of Liddle and his tenancy should thereupon cease and determine without notice.

On the same date a transaction similar in all respects was consummated whereby the S. W. ¼ of the same section, township, and range was contracted to be sold to. George Sporl and Margaret Sporl.

June 10, 1908, the Parkers, in the name of the Julesburg Land Company, entered into a contract with the appellee Clyde C. Cook, which contract was in the following terms:

"Articles of agreement, made this 10th day of June, A. D. 1908, between Julesburg Land Company of the county of Sedgwick and state of Colorado, of the first part, and Clyde C. Cook of Arlington, Nebraska, of the second part.

"Witnesseth: That if the party of the second part shall first make the payments and perform the covenants hereinafter mentioned on his part to be made and performed, the said party of the first part hereby covenants and agrees, subject to the present owner's approval, to furnish abstract showing clear title, and to convey to the said party of the second part in fee simple by good and sufficient warranty deed the following described real estate:

"The south half (S. ½) of section twenty-four (24), township ten (10) north, range forty-four (44) west of the 6th P. M. and the said party of the second part hereby covenants and agrees to pay to the said party of the first part the sum of forty-three hundred twenty ($4,320.00) dollars in the manner following: Three hundred six ($306.00) dollars cash, receipt whereof is hereby acknowledged; twenty-seven hundred thirty-four ($2,734.00) dollars when contract now on said land has been properly assigned and sent to the Arlington State Bank, Arlington, Neb.; and the balance, which is twelve hundred eighty ($1,280.00) dollars, by the assuming of the balance now due on said land contract.

"It is understood that second party is to have an option until June 16, 1908, of purchasing the northwest quarter (N. W. ¼) of section eleven (11), township ten (10) north, range forty-four (44) west of the (6—) P. M. at thirteen dollars and fifty cents ($13.50) per acre. Should this quarter be purchased by second party (of) his assigns, the papers are to be sent to the Arlington State Bank and the purchase price of said quarter sent to first parties as soon as papers are approved. If second party does not notify first party that he will take said quarter section by June 16th, then the option here given shall be null and void.

"In case of failure of the said party of the second part to make either of the payments or perform any of the covenants on his part, this contract shall be forfeited and all payments shall be retained by the said party of the first part in liquidation of damages, and if the party of the first part shall fail to furnish warranty deed and abstract showing clear title, all payments are to be refunded to the party of the second part.

"The Julesburg Land Co., by C. F. Parker.
"Clyde C. Cook."

These were the same lands theretofore contracted to be sold to Detmer and the Sporls. The appellee Alfred L. Cook was a joint purchaser, although his name does not appear in the contract.

Respecting his preliminary negotiations with the Parkers for the purchase of these lands, the appellee Clyde C. Cook testified:

"I told them that I did not want to take the land under any contracts ·and did not care to make any contracts and would not take it unless I could get an abstract showing a good title, and a deed in a short time as I had the money and wanted to pay out on it and get my land. They told me that there would be no trouble about that; that they would see Mr. Liddle, the man who owned the land; and that they would have Mr. Liddle, who owned the land, to come in and make out the deed and abstract in a short time."

This testimony stands without substantial contradiction. The next succeeding steps in the transaction are disclosed by correspondence:

"Arlington, Nebr., June 15, '08.

"Parker Bros., Julesburg, Colo.—Dear Gentlemen: I have decided not to try to buy the 160 acres on which I had an option until June 16th. When you send the abstract and deed for 320 acres, for which I have contract, have it made out jointly to Clyde C. Cook and A. L. Cook, Arlington, Nebr. Please send deed and abstract to Arlington State Bank as soon as possible, and money for the whole amount ($4,014) will be ready for you.

"Yours truly,                                    Clyde C. Cook."

"Arlington-State Bank.
"Yours business solicited.

"Arlington, Neb., June 29, 1908.

"The First Natl. Bank, Julesburg, Colo.—Gentlemen: We received your letter of the 26th inst. inclosing two contracts for land to be delivered to Clyde C. Cook upon payment of (of) $2,734.00. Mr. Cook is ready to pay the money over if the deed and abstract show perfect title, which he says was the understanding that as his contract reads he should have abstract with (privilege) of examining same, which he says should be sent to this bank.

"Yours Respy.                          H. W. Schoettger, Cas."

"The Julesburg Land Company.                    C. F. Parker
"First National Bank Block. ·                    B. D. Parker, Jr.

"Julesburg, Colorado, July 1, 1908.

"Arlington State Bank, Arlington, Neb.—Gentlemen: Yours of the 29th at hand. The situation on the land in the Clyde C. Cook deal is just as follows:

"This half section was a part of Mr. Liddle's large cattle ranch which we sold out for him last year. In the sale of this land he had a uniform price with a uniform cash payment and a uniform amount left back to be paid in annual payments. He did not wish to be bothered with making mortgages and taking separate mortgage on each piece of land. He, therefore, used the general land contracts, two of which we sent Mr. Cook. Now Mr. Liddle does not want to be bothered with changes in his deals until some time this fall when he says he will take up matters, rearrange them and give deeds to those who are ready to cash out. Nor does he wish to go into the granting of abstracts until the time that he takes up the whole proposition. I think that we told Mr. Cook when he made the deal that there was a question whether or not we could get Mr. Liddle to execute his deeds at the present time and if you will notice Mr. Cook's contract, we simply agreed with him that he was to pay so much cash, so much when the contract on said land was delivered and assume the Liddle contract for $1,280.00.

"We have taken up the matter with Mr. Liddle, as we promised Mr. Cook that we would, but he does not want to change his general .regulations and says he has not time to open up the whole proposition now, but that this fall he will be ready to give warranty deeds as stated above. As you or Mr. Cook can ascertain by writing to either of the banks here, Mr. Liddle is personally responsible for a good many quarter sections of land at the price which Mr. Cook paid. Mr. Cook also has his contract with us which we shall allow him to keep until he gets his deed and abstract and we shall be very glad to have him look up our financial responsibility. There can then be no possibility of a loss to Mr. Cook by his taking over the contract now, as it was held by Mr. Sporl and Mr. Detmer. When they bought the land they were satisfied that they were secure and many others to whom we have sold the Liddle land

have taken the land on his regular contract and are waiting for their deeds until the whole matter can be closed.

"This is in general the explanation of the situation and we trust that Mr. Cook will see fit to close up on the contract at once and take his deed this fall. Of course, Mr. Sporl and Mr. Detmer feel that the matter ought to be closed up. After making our contract with Mr. Cook, we told them that we had sold their land to a man who would assume their contract and they, of course, can see no cause for delay. Of course, prices are going up all the time and we presume that Mr. Sporl and Mr. Detmer are not very glad that they sold. Like everybody else at the present time, they feel that they might have secured a better price and have just had a letter from one of them wanting us to close the matter at once or send back his contract. You will see the position that we are in and we trust that Mr. Cook will see it and also understand that he is running no risk in taking the general land contract and waiting for his deed and abstract.

"Trust that the whole thing may be closed up soon, for if it cannot be, Mr. Sporl and Mr. Detmer will soon be demanding their papers back.

    "(Your-) truly,                              B. D. Parker, Jr:"

Upon the faith of this last letter, and shortly thereafter, appellees paid to the Julesburg Land Company the $2,734 provided in the contract, and stood ready to pay the balance of $1,280 as soon as they should be advised by the Parkers that Liddle was ready to deliver to them the abstracts and deed. The record is not clear whether the contracts made by Detmer and the Sporls were assigned and delivered to appellees. Presumably, however, they are the two contracts referred to in the letter of June 29, 1908, herein set forth. The next payments under the terms of these contracts matured December 13, 1908. Appellees, having already paid over $3,000 under their contract with the Julesburg Land Company, and relying upon the representations of the Parkers that the abstracts and deed from Liddle would be forthcoming, paid no attention to the terms of these prior contracts, and no additional payments were made on the 13th of December following. March 15, 1909, Liddle executed and filed with the county clerk of Sedgwick county, Colo., two notices of forfeiture of the Detmer and Sporl contracts, thereafter refused all tenders of the balance due under the terms thereof, and on the 15th day of February, 1911, filed in the state court a bill against appellees, the Sporls, and their unknown grantees and assignees, to quiet the title in him to the S. W. ¼ of section 24 aforesaid. The case was removed to the federal court for the district of Colorado, and thereafter appellees filed answer and cross-complaint setting out that the Parkers, as the Julesburg Land Company, were the agents of Liddle in the sale of both quarter sections to the appellees; that appellees were at all times ready to perform the contract as made; and that plaintiff was contriving to cheat and defraud appellees in the declaration of the forfeiture aforesaid. They tendered payment of the balance due appellant and prayed affirmative relief. To this appellant filed replication, and, after hearing, the court found the issues thus framed in favor of the appellees, and decreed that, upon the payment or tender to appellant by appellees of all sums found to be due, appellant should execute a warranty deed conveying to appellees the S. ½ of section 24 aforesaid. From this decree appellant prosecutes this appeal.

Charles L. Allen, of Denver, Colo. (Allen & Webster, of Denver, Colo., on the brief), for appellant.

Joseph C. Cook, of Fremont, Neb. (Dana & Blount, of Denver, Colo., on the brief), for appellees.

Before HOOK and CARLAND, Circuit Judges, and VAN VALKENBURGH, District Judge.

VAN VALKENBURGH, District Judge (after stating the facts as above). [1] From the record we are convinced that while their con-

tract with Liddle was ostensibly to terminate on or about July 1, 1907, nevertheless the Parkers continued as his agents in the sale of these lands to whomsoever desired to purchase them. Some of them were resold as many as three or four times. The testimony of appellees is corroborated by that of other witnesses and is sustained by the facts and circumstances surrounding the entire transaction. It appears in testimony that the agency and authority of the Parkers was repeatedly admitted, not only by them, but by Liddle himself. While B. D. Parker denies this agency, and claims, in contracting with Cook, to have been acting for Detmer and the Sporls, he does not deny the truth of the statements made in his letter, nor does he substantially contradict the testimony of other witnesses. From such testimony it appears that in August, 1908, B. D. Parker stated:

"That they had taken the (Cook) matter up with Mr. Liddle, and Mr. Liddle said just as soon as he had time he would execute the deed and that they would then notify the Cook boys that their deeds were ready and they could make the final payment. Mr. Parker said Mr. Liddle told him that he was too busy just at that time to execute the deeds, that he had so much to do, but he would do it at his earliest opportunity. Mr. Parker said that they represented Mr. Liddle in the sale of all of his land, that they did all of his business for him in that regard, and this matter would be attended to as soon as it could be reached."

That after the forfeiture Parker said:

"That they were never more surprised in their lives when they heard that Liddle had declared a forfeiture of this contract; that it was an outrage and that it would never hold, as he had agreed to notify us when he was ready to take up this matter and furnish abstract and deed; that they were satisfied now that his delay was simply for the purpose of being able to claim a forfeiture, as he had done the same thing in other cases."

It further appears that the land was increasing in value, and that Liddle declared it to be his purpose to insist upon the forfeiture, and to "get some easy money." As a witness in his own behalf, Liddle does deny the agency, all privity between himself and appellees, and all knowledge of the representations made by the Parkers. However, the issues of fact were resolved against him by the chancellor upon substantial evidence ample to sustain the finding. The testimony of Liddle and Parker fails to satisfy or convince; both are evasive and betray an unworthy indifference and want of moral responsibility. Appellees seek to establish no naked legal right; they were frank, sincere, and honest from the outset; they knew that they were buying at an advanced price; they have never sought to obtain anything for less than its value; they are still willing to pay in full all that they contracted and agreed to pay. In view of the size of the enterprise, they advanced a large amount of money, which will be wholly lost to them if this forfeiture should be upheld. On the other hand, appellant is getting in full all that he contracted to receive. It would be unconscionable, under the circumstances of this case, to permit him to profit at such serious disadvantage to the appellees.

[2] It is urged that while equity will not ordinarily enforce a forfeiture, this is a suit to quiet title, and in such a suit contractual rights will be enforced, even though the effect be indirectly to enforce a for-

feiture. The same argument was made in Brewster v. Lanyon Zinc Co., 140 Fed. 801, 72 C. C. A. 213; but this court, speaking through Judge (now Justice) Van Devanter, held:

"It has been said of a suit like this that it is not one to aid in the enforcement of a forfeiture. Harper v. Tidholm [155 Ill. 370], 40 N. E. 575; Mott v. Danville Seminary [129 Ill. 403], 21 N. E. 927; Pendill v. Union Mining Co, [64 Mich. 172], 31 N. W. 100. But we think it is essentially of that character. Its primary and only purpose is to establish a forfeiture as matter of record and to obtain the cancellation of the thing forfeited. This constitutes enforcement in the only sense in which that term is applicable to a forfeiture, which is that of giving effect to it after its incurrence, just as a statute is enforced after its enactment."

The rule was there announced that because forfeitures are usually harsh and oppressive, and because they can ordinarily be enforced at law, courts of equity generally refuse to aid in their enforcement. Nevertheless, that in cases otherwise properly cognizable in equity, there is no insuperable objection to the enforcement of a forfeiture when that is more consonant with the principles of right, justice, and morality than to withhold equitable relief. Under this rule, the complainant will be entitled to relief only in the event that the case made upon the hearing shall be one the equity of which is strong enough to overcome the general indisposition of courts of chancery toward aiding in the enforcement of forfeitures.

We do not think the appellant has sustained the burden thus cast upon him. Equity, having acquired jurisdiction of the entire matter under the pleadings, may grant such relief as may be consonant with principles of right and justice, and to that end we think the decree below should be affirmed.

It is so ordered.