SEMIDEY et al. v. CENTRAL AGUIRRE CO. et al.

(Circuit Court of Appeals, First Circuit. January 4, 1917.)

No. 1207.

1. LANDLORD AND TENANT ⬠285(3)—FORFEITURE OF LEASE—EQUITABLE RELIEF—ASSIGNMENT.

In a suit in equity to forfeit a lease, which permitted subletting the premises, but not assigning them, the determination of whether a transfer was an assignment or a sublease is not of much consequence, since, if it was an assignment, it would not relieve the original lessee of his legal obligations, for breach of which there would be an appropriate remedy.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1194–1196; Dec. Dig. ⬠285(3).]

2. LANDLORD AND TENANT ⬠55(3), 280—FORFEITURE OF LEASE—EQUITABLE RELIEF—GROUNDS.

If the original lessee of land and a water right, or those claiming under it, have diverted the water from the land to its substantial damage, there is a proper case for equitable protection, which might be given either by forfeiture of the lease or by the more common remedy of injunction and accounting for damages.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 143, 145–149, 1180; Dec. Dig. ⬠55(3), 280.]

3. EQUITY ⬠24—RELIEF AWARDED—FORFEITURE.

Equity views forfeiture with disfavor, and will only interfere to work a forfeiture and ascertain damages where the remedies at law are plainly and substantially inadequate.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 69–76; Dec. Dig. ⬠24.]

4. LANDLORD AND TENANT ⬠280—FORFEITURE OF LEASE—EQUITABLE RELIEF—VIOLATION OF PROVISIONS.

Where a lessee of land and a water concession, which could be forfeited by the government if the water was not used in connection with that land, had separated the use of the water from the land, but there were not shown to be any other users of water from the same stream who were complaining to the government, it is not shown that the remedies of the lessors were in law, or by the usual remedies of equity, and so inadequate as to justify a forfeiture of the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 1180; Dec. Dig. ⬠280.]

5. APPEAL AND ERROR ⬠1009(1)—REVIEW—FINDINGS OF FACT—SUIT IN EQUITY.

While in an equity proceeding the court of review must examine the case de novo, findings by the trial court, who saw the witnesses, and was in close touch with the locality and physical conditions, should not be disturbed, except in case of clear and unmistakable error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3970, 3978; Dec. Dig. ⬠1009(1).]

⬠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. LANDLORD AND TENANT ⊜⇒111—FORFEITURE OF LEASE—EQUITABLE RE-
   LIEF—INJURY.
   While a concession of water rights for use on certain lands provided
   that it should be inseparable from the lands, but it appeared that for
   several years before the leasing of the land the water had not been used
   thereon, because of the destruction of the canal, permission given by the
   lessee in good faith to another to use the water on other lands for a term
   in consideration of his repairing the canal, and with a provision that all
   rights thereto should revert to the original land at the end of the term,
   though a technical violation of the lease, resulted in no substantial injury
   to the lessor, but rather benefited his land, and therefore does not entitle
   the lessor in equity to a forfeiture of the lease, since equity will not
   interfere to protect a mere technical or strictly legal right involving no
   substantial injury.

   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 336;
   Dec. Dig. ⊜⇒111.]

7. LANDLORD AND TENANT ⊜⇒111—FORFEITURE OF LEASE—STATUTE.
   Under Civ. Code Porto Rico, § 1459, providing that, if the lessor or
   lessee should not comply with the obligations imposed by the preceding
   sections, they may request the rescission of the contract and damages, and
   section 1472, providing that the lessor may judicially dispossess the lessee
   for the infraction of any of the terms stipulated in the contract, breaches
   of the lease by the lessee do not ipso facto give the right of rescission, re-
   gardless of extenuating or moderating circumstances.

   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 336;
   Dec. Dig. ⊜⇒111.]

8. LANDLORD AND TENANT ⊜⇒285(3)—FORFEITURE OF LEASE—SUIT—ISSUES.
   In a suit to forfeit a lease for violation of the restrictions concerning
   the use of water rights, the lessor cannot raise the question that the lessee
   is violating Joint Resolution May 1, 1900 (31 Stat. 715), because its hold-
   ings are excessive.

   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§
   1194–1196; Dec. Dig. ⊜⇒285(3).]

9. WATERS AND WATER COURSES ⊜⇒156(7)—CONCESSION TO USE WATER—RE-
   STRICTION TO LAND.
   Under a water right concession, which declared the water to be in-
   separable from the land for which it was granted, that it could not be
   utilized for other purposes, nor the one alienated without the other, the
   lessee of part of the land, and those claiming under it, cannot legally use
   the water, except on the land.

   [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig.
   § 182; Dec. Dig. ⊜⇒156(7).]

Appeal from the District Court of the United States for the Dis-
trict of Porto Rico; Hamilton, Judge.

Suit by Francisco Semidey and others against the Central Aguirre
Company and others. Decree for defendants, and plaintiffs appeal.
Decree vacated in part, and otherwise affirmed.

Perry Allen, of New York City (Henry G. Molina, of San Juan,
Porto Rico, on the brief), for appellants.

Charles Hartzell, of San Juan, Porto Rico, and Malcolm Donald,
of Boston, Mass. (Stafford Johnson, of Boston, Mass., on the brief),
for appellees.

Before DODGE and BINGHAM, Circuit Judges, and ALDRICH,
District Judge.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ALDRICH, District Judge. The questions raised in this case grow out of a controversy in respect to a lease of a sugar plantation at Guayama, Porto Rico, known as Hacienda Teresa, "together with whatsoever is covered by and appertains to said lands, and is annexed to and remaining thereon, with their entrances and exits, uses, rights and servitudes," and among the rights and servitudes covered by this clause were certain water rights running with the land by virtue of an irrigation concession granted by the local Spanish authorities in 1861, and confirmed by the government of Spain in 1868.

The lease was by the Semidey family to the Central Aguirre Company, and was dated July 30, 1901, and the concessionary right which attached to the land was that of the right to take the waters of the rivers Lapa and Majada for irrigation purposes.

The water right concession was to the owners of six haciendas, two of which owners withdrew, and it is claimed that the concessionary rights thereupon centered in the remaining four concessionaries as owners of haciendas or plantations, known, respectively, as Teresa, Aguirre, Carmen, and Amedeo; but there is nothing for us to decide in respect to the question whether the entire grant to the six concessionaries, upon the withdrawal of two, inured to the remaining four.

There was a provision in the concession that "the waters granted are inseparable from the haciendas for which they are granted; they cannot be utilized for other purposes, nor the ones alienated without the others"; and in the approval of the government of Spain, through its minister of the colonies, it was provided that failure to observe the provisions of the concession should cause the concession to lapse.

[1] It is claimed that the Aguirre Company transcended its rights under the lease from the Semidey family of July 30, 1901, and exposed the concession to forfeiture by making an assignment, renunciation, and transfer of the lease to Mr. Jeremiah Smith, for himself, his successors, or representatives, who in turn assigned or sublet to Frazer, Rogers & Noyes, expressly reserving to the Central Aguirre Company the use of the concessionary canal and its waters, thereby separating the concessionary waters from the Teresa land and hacienda, to which the rights were inseparably and inviolably annexed, thereby again exposing the concession to imminent danger of forfeiture.

There was no provision in the lease expressly authorizing an assignment as such, and, although there was a provision authorizing a lease, it was provided that:

"In case the Central Aguirre Company should lease the hacienda to another person, it is understood that the clauses and terms of this contract shall always remain in full force and effect with the Central Aguirre directly responsible to the lessor."

Looking at the purpose of the Central Aguirre Company in its conveyance to Smith, we think the idea of the Aguirre Company was not to renounce in the sense of surrendering any rights under their lease in respect to the waters of the rivers, but to transfer them to Smith and his successors; and, that being the purpose, the difference between an assignment and a subletting would not be of much consequence, in an equitable sense, except in so far as it might bear upon

the question of danger of forfeiture. An assignment of this character would simply transfer such right as the original lessee, had, and it is not easy to perceive that, by such an act, the lessee could relieve itself from the legal obligations which rested upon it under the terms of the lease, and, if the obligations in respect to repairs, settlements, and other things were not fulfilled, that an appropriate remedy would not be at hand.

It is further contended (and in this contention perhaps lies the substantial and turning point of the case) that the Central Aguirre Company, to whom the use of the waters was expressly reserved, proceeded, in connivance with one Manuel Gonzales, and with the consent of Smith, to divert the waters and apply them to the use of certain lands belonging to Gonzales, not covered by the concession; that Gonzales closed the intake of the subcanal leading to the Hacienda Teresa, constructed a subcanal of his own and tapped the joint or main canal of the concession at a point immediately above the intake of the subcanal leading to the Teresa estate, and took and used a large portion of the water of the Lapa and Majada rivers for the purpose of irrigating lands of his own not covered by the concession; and that this condition continued from 1907 to the time of filing the bill in the early part of 1912.

This proceeding is in equity, and was instituted in the District Court of the United States for the District of Porto Rico, and the relief sought is that the lease of July 30, 1901, together with subsequent renewals, be canceled as of July 31, 1911; that the renewal of the lease, dated March 25, 1911, be canceled; that the Central Aguirre Company, Smith, and others be directed to vacate the Hacienda Teresa; and for an injunction and an accounting.

The question here is not so much a question whether the assignment was a technical breach of the lease, or whether there are unfulfilled obligations in respect to the repair of ditches, canals, and fences, and unfulfilled obligations in respect to squatters and other things, as it is a question whether the plaintiffs have made out a case for equitable relief.

[2] It goes almost without saying that if either the original lessee, or those acting under the lease, either by virtue of an assignment or a sublease, or otherwise, have tapped the canal and diverted waters which were going, and should go, to the Teresa hacienda, and that ownership is suffering substantial damage, it would be a proper case for equitable interference and protection, and that protection might come through a possible decree of forfeiture, or through the instrumentality of the more common and less offensive remedy by injunction and an accounting as to damages.

[3] In equity the element of drastic force involved in the idea of forfeiture is not looked upon with favor. Indeed, it is viewed with disfavor, and it is only in extreme cases, and where remedies at law are plainly and substantially inadequate, that equity will interfere to work a forfeiture and ascertain damages. Jones v. New York Guaranty & I. Co., 101 U. S. 622, 25 L. Ed. 1030; Henderson v. Carbondale Coal & Coke Co., 140 U. S. 25, 11 Sup. Ct. 691, 35 L. Ed. 332;

Brewster v. Lanyon Zinc Co., 140 Fed. 801, 72 C. C. A. 213; Lindeke v. Associates Realty Co., 146 Fed. 630, 77 C. C. A. 56; U. S. v. Oregon & C. R. Co. (C. C.) 186 Fed. 861; St. Louis Union Trust Co. v. Galloway Coal Co. (C. C.) 193 Fed. 106, affirmed on appeal in 201 Fed. 1022, 119 C. C. A. 294; Liddle v. Cook, 209 Fed. 182, 126 C. C. A. 130.

[4] There is nothing in the record which presents any public phase in respect to the waters in question. The primary idea upon which a government reserves to itself the right to declare a forfeiture of its grants in respect to public waters is, that the duty rests with all governments to protect members of the public when their rights and interests are involved in the use of public waters. The concession in question was to six owners located upon or near the waters in question. The waters, in a sense, may be public waters; but, be that as it may, there are no owners above, or below, or between the six concessionaries, who are complaining that their rights have been invaded, and for that reason that the concession should be forfeited. This is merely a controversy between holders under a single grant, who are in dispute as to their relative rights. The remedies for ascertaining and establishing their rights must be adequate, either in the usual course of law, or of equity, and usual remedies are to be favored above exceptional and oppressive remedies through forfeiture.

We see no ground, under the circumstances of this case, for saying that the assignment or the sublease should be canceled upon the ground that there is imminent danger that the concession will be declared forfeited by the government, or upon the ground that the concessionary rights are otherwise in danger.

The assignments of error are 32 in number, but we do not deem it necessary to consider them seriatim, because there are certain general principles of equity which must be accepted as controlling, and as against the general claim of the plaintiff for forfeiture and cancellation as equitable relief.

There are 15 findings which are special in the sense that they are findings upon distinct phases of the case.

Although a substantial part of the proofs, and perhaps all of the proofs before Judge Hamilton, are in the record, there is not upon the evidence very much conflict in respect to the substantial features of the case. Some of the findings of the court below involve law and fact, but those which relate to the grounds which may become the basis of equitable relief are purely findings in respect to questions of fact. As for instance, No. 11, which is, in effect, that the complainants are not being injured by Gonzales' restoration of the Lapa canal, at his own expense, and the use of the waters of the Lapa river by him under the reservations in the sublease. And the same is true of finding 13, which is to the effect that in 1910, after some adjustment of water and canal conditions, that the Teresa estate was receiving all of the irrigation water from said concession to which it was entitled.

[5] While in an equity proceeding the court of review may and must examine the case de novo, findings of fact by the court, who saw

the witnesses and was in close touch with the locality and the physical conditions involved, will not be disturbed, except in case of clear and unmistakable error. Villanueva v. Villanueva, 239 U. S. 293, 36 Sup. Ct. 109, 60 L. Ed. 293; Washington Securities Co. v. United States, 234 U. S. 76, 78, 34 Sup. Ct. 725, 58 L. Ed. 1220; Stuart v. Hayden, 169 U. S. 1, 14, 18 Sup. Ct. 274, 42 L. Ed. 639; Trujillo & Mercado v. Succession of Rodriguez, 233 Fed. 208, 147 C. C. A. 214.

[6] The concession in question was in 1868. It gave the grantees or concessionaries certain rights in respect to the waters of the Lapa and Majada rivers for purposes of irrigation, and there were certain provisions as to canals, intakes, conduits, repairs, and various other things. Soon after the grant, canals were constructed, and other things were done with a view of utilizing the water rights granted by the government of Spain. The canals and other structures were so far destroyed by a hurricane in 1878 as to render them practically useless, and after some things had been done by the Central Aguirre syndicate by way of reconstruction, they were again in 1899 practically demolished, and after an expenditure of considerable sums of money upon the Majada canal, and after investigations in respect to the expense of restoring the Lapa canal, it was decided not to undertake the work of its reconstruction.

It would seem that the owners of the Teresa interest did nothing in the direction of repairing the canal, either by themselves or in connection with the other owners; that they were sleeping upon their concessionary rights for 20 years or more; and that the waters, so far as the Lapa river and the Teresa hacienda were concerned, were in practical nonuse and going to waste, at the time of the lease to the Central Aguirre Company.

The idea of the Central Aguirre Company under its lease was to utilize the waters; but having ascertained the expense of reconstruction of the Lapa canal and other things connected with it, and that the expense was such that they did not care to assume it, they entered into a contract with Manuel Gonzales for grinding cane, and an arrangement was made with him to repair the Lapa canal under a scheme which contemplated his use of the waters of the Lapa river, upon condition that the rights should revert to the Central Aguirre Company at the termination of the agreement with Gonzales. This arrangement between the Central Aguirre Company and Gonzales, and what was done under it, unquestionably involved an unwarranted diversion of the waters; but there is nothing in the situation which indicates bad faith. It is reasonable enough to assume that the Central Aguirre Company acted under the supposed, but mistaken, idea of a right under the lease to utilize waters which were in practical nonuse and doing no one any good.

While the diversion cannot be justified in a strict legal sense, it is urged that the owners of the Teresa interest have taken rents under the lease, or some part of them, and that that operates as a waiver of any point that might otherwise be taken against the violation of the terms of the lease and the unwarrantable diversion of the waters. But we do not go much into the question of waiver, because under the cir-

cumstances, it is difficult to see that the complainants have suffered any substantial injury, if any injury at all, by reason of the diversion of the waters and the technical invasion of their rights. Indeed, it seems more probable than otherwise that the Teresa estate has been benefited by the restoration of the canal and other structures. It is not necessary to inquire whether the Teresa hacienda is getting under present conditions, or was getting under the conditions existing at the time these proceedings were instituted, as much water from the Lapa river as it was entitled to under the original concession, because it is quite sufficient to say that that estate is receiving as much water as it was receiving before the restoration of the canals and the other works by Gonzales at a large expense, and under a restoration which must ultimately inure to the benefit of the Teresa estate.

It is not our understanding that equity must interfere, or should interfere, at the instance of a party suffering no substantial injury, to regulate technical or strictly legal rights. Where disputes arise between owners of community water rights under a grant, there must not only be the grievance of legal invasion, but a grievance of irreparable, or at least of substantial injury, in order to justify the interposition of equity, to the end that questions as to forfeitures and leases should be regulated.

[7] The point is taken that, under sections 1459 and 1472 of the Civil Code of Porto Rico, the breaches of the lease, and of the conditions of the original concession, put the concession in jeopardy of forfeiture and operate to give the lessors under the doctrine of rescission the right to demand possession of the premises.

We do not understand that all departures from the terms of concessions, or of leases necessarily operate that way ipso facto. There might be extenuating and moderating circumstances, and it is doubtless for such reasons that under both sections judicial investigation and judicial dispossession are contemplated.

[8] A further point is taken that the defendants stand here in violation of the joint resolution of Congress, approved May 1, 1900 (31 Stat. 715), modifying what is known as the Foraker Act (Act April 12, 1900, c. 191, 31 Stat. 77), because their holdings of land interests are excessive. We do not go into the question of the holdings of the corporation, or consider any questions of restriction of holdings, because it is clearly not the right of a party to an equity proceeding invoked for the purpose of regulating relative water rights under a joint grant, to raise a question of that kind in the collateral way in which it is sought to be raised by the complainants here.

Viewing this case as one involving commingling water rights, where the interests, from the very nature of things, are dependent and interdependent and relative, rights affected by development and by nondevelopment, by user and by nonuser, and as a case in which the complainants are suffering no permanent or substantial injury, we see no reasonable grounds for canceling the leases upon the ground that their provisions have been violated, nor do we think that any of the questions involved in this case should be influenced by any contention that the concession is in jeopardy of forfeiture.

[9] Section 8 of the concession of 1861 is quite imperative in its terms, in that it declares that:

"The waters granted are inseparable from the haciendas for which they are granted; they cannot be utilized for other purposes, nor the ones alienated without the others." '

We cannot see that Gonzales, or any others claiming under the lease of the Teresa hacienda, could get any greater right of diversion than that which the Teresa had under the original concession.

Gonzales, by tapping the main canal below the junction of the Lapa and Majada rivers, and taking the waters of the joint canal by means of a subcanal of his own, is using the water upon his own lands and land not covered by the irrigation concession. This is something that seems not to be in dispute, and, that being so, we think that part of the final decree which declares that the "waters which are being taken by Gonzales from the Lapa concession are being legally used" should be vacated, and this notwithstanding it is further declared that the use thereof is in trust for the owner of the Teresa estate.

We find no grounds for interfering with the District Court's disposition of the cause in respect to cancellation and forfeiture, nor with its order in respect to rents now in the possession of the District Court for the district of Ponce; but we think that part of the decree which declares Gonzales' use to be legal should be vacated, to the end that the complainants' prayer for an injunction in the pending cause may be available to them, if, under present or subsequent conditions, the situation should be such that the use should be terminated or regulated by injunction, and as to what should be done through such an instrumentality we express no opinion.

As both parties in a measure prevail under this appeal, we think no costs should be taxed by either party in this court.

The decree of the District Court, declaring Gonzales' use of the Lapa water to be a legal use, is vacated. In all other respects it is affirmed. No costs in this court.

⚬⚬For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes