NEW YORK BELTING & PACKING CO. *v.* NEW JERSEY CAR-SPRING & RUBBER CO.

(*Circuit Court, S. D. New York.*    December 24, 1891.)

1. PATENTS FOR INVENTIONS—PATENTABLE NOVELTY—DESIGN FOR RUBBER MATS.
    The third claim of letters patent No. 11,208, issued May 27, 1879, to the New York Belting & Rubber Company, as assignee of George Woffenden, is for a "design for a rubber mat, consisting of a series of parallel corrugations, the general line of direction of the corrugations in one section making angles with or being deflected to meet those of the corrugations in the contiguous or other sections;" the object being to produce kaleidoscopic, mosaic, and *moire* effects.    *Held* that, as to the specific design, the claim possesses patentable novelty, as the effects produced by the design as a whole have never been realized or approached by any previous arrangement of corrugations.
2. SAME—INFRINGEMENT.
    Although the patent shows a square mat having a square central panel traversed by diagonal lines, it is infringed by an oblong mat possessing substantially the same features, excepting that in the central panel, which is also oblong, the diagonal lines are not run from corner to corner, to form acute and obtuse angles, but merely form a right angle in each end of the panel; it being apparent that this was merely a mechanical change necessary to adapt the design to an oblong mat.
3. SAME—ASSIGNMENT PENDENTE LITE—PLEADING AND PROOF.
    When, pending a suit for infringement, the patent is assigned, with a reservation of past damages, and on proof thereof the cause is retained for the purpose of recovering such damages, a subsequent reassignment to the complainant cannot be proved under the original bill.

In Equity.    Suit for infringement of patent.    Decree for an accounting.

*B. F. & W. H. L. Lee*, for complainant.

*A. v. Briesen*, for defendant.

COXE, J.    This is an action for the infringement of letters patent, No. 11,208, granted to the complainant, as assignee of George Woffenden, May 27, 1879, for a design for a rubber mat.    The patent has twice been before the courts.    The circuit court held the patent invalid on demurrer.    30 Fed. Rep. 785.    The supreme court reversed this decision, in part, holding that the question of novelty should be decided on pleadings and proofs.    137 U. S. 445, 11 Sup. Ct. Rep. 193.    A description of the invention will be found in these volumes, and particularly in the report of the supreme court decision, where a diagram of the design appears.    The first claim was held void by the supreme court and was afterwards disclaimed by the complainant, but the court said of the second and third claims that they may fairly be regarded as confining the patentee to the specific design described in the specification and drawing.    Of these two claims, the third is the narrower.    It is as follows:

"(3) A design for a rubber mat, consisting of a series of parallel corrugations, depressions or ridges arranged in sections, the general line of direction of the corrugations in one section making angles with or being deflected to meet those of the corrugations in the contiguous or other sections, substantially as described."

The defenses are lack of patentability, non-infringement, and defective title.

The specification says:

"In accordance with this design the mat gives under the light different effects, according to the relative position of the person looking at it. If the person changes his position continuously, the effects are kaleidoscopic in character. In some cases *moire* effects, like those of *moire* or watered silk, but generally mosaic effects, are produced. Stereoscopic effects also, or the appearance of a solid body or geometric figure, may at times be given to the mat, and under proper conditions an appearance of a depression may be presented."

In referring to this feature of the design the supreme court intimates that a new and interesting question is thereby presented. The opinion says:

"It is possible that such a peculiar effect, produced by such a particular design, impressed upon the substance of india-rubber, may constitute a quality of excellence which will give to the design a specific character and value and distinguish it from other similar designs that have not such an effect."

It is true that the court is careful to express no opinion upon this question, and yet it seems improbable that the suggestion would have been made unless the court was impressed with the novel character of the design in this particular. That the square mat, introduced by the complainant, which is conceded by the defendant to be a correct embodiment of the drawing, possesses the kaleidoscopic effect referred to there can be no doubt. Viewed from one position certain sections of the mat appear grey, some have a bluish tinge, others are almost black, and others still have a variegated appearance, varying from a dark, rich, velvety effect in one part, to a light metallic or silvery effect in another. Let the observer change his position and the transformation of the design is instantaneous. What was light before is dark now, and *vice versa*. In one position the mat seems to be all of one color, in another of several different colors, like mosaic or marquetry flooring. There is nothing at all comparable to this in the prior art. The nearest approaches are the rubber stair-plates and bath brushes introduced by the defendant. These unquestionably have some features of the present design, but they do not possess the peculiar effect before alluded to. All of them together could not be so arranged as to suggest the patented design. It has frequently been held that a design patent cannot be anticipated because the separate features of the design are old. If this were otherwise it would be difficult to conceive of a patentable design, for it is an easy matter in all these cases to show that every line, color and object represented was known before. Proof of this character does not defeat a design patent any more than proof that all the separate elements of a combination are old defeats a combination patent. In one case the combination must be new and produce a new result, in the other the design must be new and produce

a new effect. It is the impression produced upon the eye by the design which is the test of patentability. If this is new and pleasing it matters not that the various elements which combine to produce this impression are old. The question is not whether the prior art shows anything which looks like sections of the design, but whether it shows the design as a whole. If not, and the design possesses the other characteristics alluded to it is patentable. Tested by this rule I have, with some hesitation, however, reached the conclusion that under the intimation of the supreme court this patent can be sustained.

The question of infringement is also a difficult one. The only drawing represents a square mat. The specification says, however: "A is the mat, which is, as represented, square, although it might be oblong or other desired shape." The defendant's mat is oblong. The elongation of the mat necessarily involved some changes in the contour of the sections. This is particularly noticeable in the central panel. In the patent it is square, made up of four minor sections produced by lines drawn from corner to corner crossing each other at right angles. It is manifest that this square cannot be made oblong without changing somewhat the appearance of the sections. The complainant's expert describes and contrasts the mats, in this respect, as follows:

"The mat shown in the drawing of the patent being a square mat is arranged with the diagonal lines running from corner to corner of the central square, the diagonal lines being at an angle of 45 degrees with the two lines at right angles from the intersection of which it starts. The defendant's mat is oblong and the angularity of the diagonal lines with the lines at right angles has been preserved the same as in the patent, but, as the mat is longer than it is broad, these lines cannot, of course, run from corner to corner of the central rectangular section."

The larger section of the central panel of the defendant's mat has a swallow tail at each end instead of presenting the appearance of a Maltese cross as in the patent. The herring-bone border of the defendant's mat is broken four times instead of twice as in the drawing. But the differences and similarities of the two can best be illustrated by placing diagrams of them side by side.

*Patent.*          *Defendant.*

 

Unquestionably the patentee, under the language of the specification, was permitted to embody his design in an oblong mat as well as in a square mat. This is not seriously disputed, but it is said that the ob-

NEW YORK BELTING & P. CO. v. NEW JERSEY CAR-SPRING & R. CO.  559

long mat of the patent requires a central field composed of diagonals drawn from corner to corner, the lines crossing as they do on the reverse side of a letter envelope. It is true that the mat could be elongated in this way, but it is also true that it would contain as many departures from the square of the drawing as does the defendant's mat. If a square is stretched out into a rectangle it is very clear that it will no longer look like a square. It is impossible for the central panel of an oblong mat to retain all the characteristics of the central panel of a square mat. If defendant's suggestion is adopted the right angles of the drawing disappear and in their place are substituted two obtuse angles and two acute angles. I am inclined to think, therefore, that the defendant's mat shows the design of the patent, not the exact design of the drawing, for that would be impossible, but the design of the patent as applied to an oblong mat. The mechanic, conversant with such matters, when shown the square mat and asked to convert it into an oblong mat would produce the defendant's mat. An ordinary purchaser who had seen the patented design and who started out with the intention of buying an oblong mat embodying that design, would return with the defendant's mat. All the distinguishing features of the infringing mat are taken from the design. The man who produced the mat evidently had the design before him, his object being to transfer it to an oblong mat, preserving at the same time all the pleasing characteristics of the design.

Prior to the taking of testimony, which began on the 7th of March, 1891, the complainant assigned the patent in suit to an English corporation. At the first hearing the defendant objected to proceeding further on the ground that the suit had abated. No notice having been taken of the objection the defendant subsequently proved the assignment of the patent to the English corporation, together with all damages and profits since June 1, 1890. After this proof had been received a motion was made for leave to file a supplemental bill joining the English company as a party complainant. This motion was denied for the following reasons: The English company had no claim for infringements prior to June 1, 1890. There was no proof or suggestion of infringements since that date. The English company could not maintain an independent action, and, therefore, should not be made a complainant in the pending suit. It was also decided that the court, having obtained jurisdiction, would retain it for the purposes of an accounting. 47 Fed. Rep. 504. The English company immediately after this decision reassigned the patent to the complainant. Without asking leave to file a supplemental bill, or obtaining the permission of the court in any way, the complainant introduced this reassignment in evidence. The defendant objected upon the ground, among others, that it was incompetent under the pleadings. The defendant having given due notice, now moves to expunge the reassignment from the record.

After diligent search I have been unable to find an authority exactly in point. None is cited. By every analogy it would appear that a title accruing *pendente lite* cannot be given in evidence under the original bill. Again, under the decision last referred to there is some doubt whether

the presence of the reassignment, even if rightfully upon the record, can at all affect the decree. By the assignment to the English company the complainant lost all right to an injunction, and, by virtue of the assignment alone, the English company did not acquire the right to an injunction, and never possessed it. It is argued with force that what the English company did not have it could not assign, and that the complainant took nothing by the reassignment, so far as the decree is concerned, which it did not possess before. It is not necessary, however, to decide whether the reassignment invested complainant with the lost right to an injunction, for the reason that I am constrained to hold that the reassignment is not properly before the court. Should an injunction be necessary hereafter for the protection of the complainant, it will not be difficult upon proper showing, either in this or in another action, to obtain this relief. The complainant is entitled to a decree for an accounting, but, as a disclaimer was filed *pendente lite,* (Rev. St. § 4922,) it must be without costs.