AUTOMATIC SWITCH CO. OF BALTIMORE CITY v. CUTLER–HAMMER MFG. CO.

(Circuit Court of Appeals, Second Circuit. May 22, 1906.)

No. 118.

ABATEMENT AND REVIVAL—ASSIGNMENT OF INTEREST IN PENDING SUIT.

If a sole complainant suing in his own right assigns his whole interest to another, he can no longer prosecute the suit, which is completely suspended until revived, and all orders and proceedings taken in the meantime are nugatory. After such abatement the successor in interest may revive the suit by an original bill in the nature of a supplemental bill. to which the defendant may plead, but has no other right until such revivor, and a reassignment to the original complainant carries only the same right and does not operate to restore the suit to its original status before the first assignment.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Abatement and. Revival, §§ 212–220.]

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 139 Fed. 870.

This cause comes here upon appeal from a decree of the Circuit Court, Southern District of New York, finding validity and infringe-

ment of a patent and decreeing injunction and accounting. The patent is No. 499,769, granted June 20, 1893, to George H. Whittingham for "Improvements in Automatic Switches," title to which was in complainant prior to and at the commencement of the suit.

R. N. Kenyon and W. Clyde Jones, for appellant.
Philip Mauro, for appellee.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

PER CURIAM. After the Circuit Court had filed its opinion, and before decree was signed, defendant on March 27, 1905, suggested the existence of an assignment which it contended operated to abate the action and prayed for a dismissal of the bill or for such other relief as might seem equitable, just, and proper. Nevertheless, on April 20, 1905, the Circuit Court denied the motion and signed the decree. No discussion of this point is found in the record. Quite possibly the court thought it best that its decision on the merits should be embodied in a decree, and that the technical point thus raised should be reserved for the appellate tribunal. It seems to be controlling of the disposition to be made of this appeal.

The bill of complaint was filed July 2, 1901. On July 10, 1902, the complainant, sole complainant, executed an assignment to the Otis Elevator Company. This document, after reciting that the Automatic Switch Company "are now the sole owners of * * * the said patent and invention and * * * all rights thereunder," in consideration of $5 and other valuable considerations sold, assigned, transferred, and set over to the said Otis Elevator Company, its successors and assigns, "the entire right, title and interest which we have or may have in, to and under the aforesaid letters patent, invention and improvement and any reissues or extensions of said letters patent granted or to be granted throughout the United States and the territories thereof," and also "any and all claims or demands for damages and profits accrued or to accrue for past or any use of said improvements or invention without right or license, with the right to use our name in legal proceedings and to sue for and recover all such damages and profits." By this conveyance the switch company stripped itself of every right, title, and interest to, in, and under the patent—nothing was left to it. The assignment states that it is agreed between the switch company and the Otis Company that in the event of the patent being sustained by the Court of Appeals in the suit at bar the Otis Company would pay an additional consideration of $2,000. That agreement gave the switch company no legal or equitable interest in the patent. It was further agreed that the Otis Company should pay all subsequent expenses of the litigation, and that the switch company should devote its best energies to pushing the suit to a final determination under the supervision and direction of the Otis Company. This agreement in no wise changed the mutual relations of the parties to the assignment.

The effect of this assignment was to abate the suit. If a sole plaintiff, suing in his own right, assigns his whole interest to another, he is no longer able to prosecute the suit because he is without inter-

est in the litigation. It is unnecessary to refer to any authorities in addition to those cited in our opinion in Ecaubert v. Appleton, 67 Fed. 917, 15 C. C. A. 73. The suit is completely suspended and cannot be proceeded in till it is revived, and all orders and proceedings pending such abatement will be considered nugatory. After such an abatement, i. e., one caused by assignment of plaintiff's whole interest, the successor in interest, claiming by a title which may be litigated, may revive the suit by an original bill in the nature of a supplemental bill. Of such a bill Story says:

"But in the other case [an original bill in the nature of a supplemental bill] a new defense may be made. The pleadings and depositions cannot be used in the same manner, as if filed or taken in the same cause; and the decree, if any has been obtained, is no otherwise of advantage than as it may be an inducement to the court to make a similar decree." Equity Pleading (9th Ed.) § 384.

From the execution and delivery of the first assignment till after the filing of the opinion in the Circuit Court, a period of nearly three years, the litigation was being conducted by a person who had no interest in the patent or in any claim arising under the patent. Under all the authorities such proceedings were nugatory. The defendant was entitled to have the controversy conducted, not by a stranger, but by the owner of the patent and of the claims for profits and damages, and all the testimony taken in such a moot case may be disregarded, and any orders made during such period may be discharged.

Complainant sought to avoid the effect of this well-settled rule of practice by obtaining an assignment to it by the Otis Company of the entire right, title, and interest in the patent and all claims or demands for past and future damages and profits. Such assignment was executed April 6, 1905, and submitted to the court before decree was signed. The effect of this, however, is only to convey to the switch company exactly what the Otis Company had to convey on April 6th. So far as its effect on this suit is concerned, what the latter company had to convey on that day was the right to apply to the court for leave to file an original bill in the nature of a supplemental bill, and, upon filing the same, to take up the cause in the condition it was on July 10, 1902, with whatever additional defenses the defendants might interpose to the latter bill, and prosecute the same to a conclusion. That is what the Otis Company had to convey, and that is what the switch company obtained by the assignment.

It is to be regretted that by reason of this failure to conform to well-settled rules of practice the time, labor, and money which has been expended upon this voluminous record and on the preparation and presentation of arguments on the merits has gone for nought—temporarily at least, no doubt in future litigation most of this testimony will be stipulated in. One source of regret, however, is absent in this particular case. The unfortunate result has been brought about, not through any oversight of counsel, but solely by the client's own extraordinary conduct. Although the original assignment was executed in July, 1902, the switch company, for some inscrutable reason, kept the transaction a profound secret from its own counsel

who, as he says, learned of it only when defendant made its motion after opinion was filed. Possibly the officers of the company apprehended that if the lawyers once knew of the assignment they would make all sorts of troublesome suggestions, which might increase the delay or the expense of the proceeding. If so the overastuteness of the lay mind has produced a lamentable result. Certainly the client has paid a very heavy price for learning the lesson that it is essential for any one who enters into litigation to tell his counsel the whole story.

The decree is reversed, with costs of this court, and cause remanded, with instructions to allow complainant or the Otis Company, or both, to file an original bill in the nature of a supplemental bill, and, in the event that no such bill is filed within a reasonable time, to dismiss the bill with costs.