## CARTWRIGHT v. SOUTHERN PAC. CO.

(District Court, D. Oregon.    July 21, 1913.)

No. 3,669.

1. INJUNCTION (§ 195*)—JURISDICTION—RETAINING CASE TO GIVE COMPLETE RELIEF.

Where the jurisdiction of a court of equity was properly invoked to compel the removal by defendant of dikes which were deflecting the current of a river against complainants' lands to their serious injury, such court will retain the case and assess complainants' damages, although by reason of the lapse of time the injunctional relief has become inappropriate.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 415; Dec. Dig. § 195.*]

2. LIMITATION OF ACTIONS (§ 32*)—NATURE OF SUIT—INJURY TO REAL PROPERTY—"TRESPASS."

Where the direct result of such dikes was to cause the washing away of the soil of complainants' land destroying the freehold, the suit is one in the nature of "trespass" within the meaning of the statute of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 143–145; Dec. Dig. § 32.*

For other definitions, see Words and Phrases, vol. 8, pp. 7088–7092.]

In Equity.   Suit by J. R. Cartwright against the Southern Pacific Company.   On final hearing.   Decree for complainant.

A. C. Woodcock, of Eugene, Or., and Martin L. Pipes, of Portland, Or., for plaintiff.

Wm. D. Fenton and Ben. C. Dey, both of Portland, Or., Jas. E. Fenton, of San Francisco, Cal., and Kenneth L. Fenton, of Portland, Or.; for defendant.

BEAN, District Judge.   This case was submitted some months ago. Its decision has been delayed waiting briefs which the court understood counsel desired to file.   No briefs have been submitted, and, as more than a reasonable time for filing the same has elapsed, it is assumed that none will be.

The suit was commenced in June, 1910, to enjoin and restrain the defendant company from maintaining four certain dikes in the Willamette River above the Harrisburg Bridge, erected by it in 1905, and for damages on account thereof.

Before the construction of the dikes the river made quite a sharp turn to the left or west at or just below the bridge, and the current, avoiding plaintiff's land, closely hugged the west bank and was eroding and washing it away and endangering defendant's bridge and roadbed.   The dikes are permanent structures and extend from the west bank into the river several hundred feet; the purpose being to deflect the current and protect the bank.   At the time their construction was commenced, the plaintiff, who owns a valuable farm on the opposite side of the river and extending below the bridge, objected thereto on the ground that the effect would be to change the channel of the stream and throw the current against his land, washing away his soil and

destroying his property. The defendant therefor constructed a wing-dam on the east side of the river, where damage was likely to occur to plaintiff's property, for the purpose of· protecting the same, but shortly thereafter removed the dam with dynamite on a public holiday, notwithstanding the vigorous protest of the plaintiff and his request to the defendant's agents to postpone the matter until the following day so that he could institute legal proceedings to prevent or enjoin the destruction thereof. The result of the erection of the dikes on the west side of the river and the removal of the wingdam on the east bank was to deflect the current and throw it against the opposite bank, causing the river to abandon its former channel and cut a new one through the plaintiff's land, carrying away his soil to his great injury.

The change in the course of the stream occurred and the damage was inflicted prior to the commencement of this suit, and it is not probable that the river would have returned to its original channel if the dikes had been removed at the time, nor will it do so now. A decree requiring an abatement of the obstructions would therefore be of no benefit to the plaintiff, but a substantial injury to the defendant, as they are necessary to the preservation of its roadbed by preventing the river from cutting away the banks.

[1] The only question in the case therefore is one of damages. I have been in doubt whether, under the circumstances stated, the plaintiff's remedy is at law or in equity, and whether the court should proceed to assess the damages or transfer the case to the law side of the court, as provided in Equity Rule 22 (198 Fed. xxiv), but have concluded that inasmuch as the jurisdiction of a court of equity was properly invoked to compel the removal of the dams or dikes, if the facts warrant (Morton v. Ore. Short Line, 48 Or. 444, 87 Pac. 151, 1046, 7 L. R. A. [N. S.] 344, 120 Am. St. Rep. 827), it will retain the suit for the adjudication of the entire matter in controversy, although it may not be able to grant the entire relief demanded (U. S. v. Bernard [C. C. A.] 202 Fed. 728).

[2] The defendant contends that, as the permanent structures were erected and the change in the channel of the river occurred more than two years prior to the commencement of the suit, the claim for damages is barred by the statute of limitations, and that depends on whether the acts of the defendant and the results thereof constitute a trespass on real property. There are authorities holding that the remedy for overflowing the lands of another where the obstruction causing the overflow is not on plaintiff's land, and there was no physical entry thereon, is an action on the case and not in trespass (Hicks v. Drew, 117 Cal. 305, 49 Pac. 189); but it seems to me that, where the direct result of the obstruction is to wash away the soil of another and thereby destroy the freehold, it amounts in effect to the taking of property and is a "trespass" within the meaning of the statute of limitations, whether the obstruction is upon plaintiff's land or not, and as a consequence the present suit is not barred. Lords Ore. Laws, § 6; 38 Cyc. 994–997; Pumpelly v. Green Bay Co., 13 Wall. 166, 20 L. Ed. 557; Gulf, C. & S. F. Ry. v. Mosely, 161 Fed. 72, 88 C. C. A. 236, 20 L. R. A. (N. S.) 885.

The evidence shows that a considerable area of plaintiff's land has already been washed away as a direct result of the dikes erected by the defendant; but the nature and value thereof is not easily ascertainable from the record. The present and apparently permanent channel of the river caused by such dikes is through and across the plaintiff's property. The current sets steadily against the east bank, which is rich sandy loam and is constantly being undermined and destroyed. The area covered by the stream at the time the evidence was taken and which was not within the former channel is about 20 acres. A part of this, however, was a gravel bed before the erection of the dikes and of no substantial value.

Without referring to the evidence in detail, it is sufficient that after a careful consideration of the record my conclusion is that $3,500 is a fair estimate of the damage, present and prospective, suffered by the plaintiff on account of the wrongful acts of the defendant in erecting and maintaining the structures complained of.

A decree will therefore be entered in favor of the plaintiff for that amount.