BICKEL v. ROCKWOOD.

(Circuit Court of Appeals, Second Circuit. November 11, 1913.)

No. 46.

CORPORATIONS (§ 121*)—SALE OF STOCK—ACTION FOR BREACH—EVIDENCE CONSIDERED.

A plaintiff *held*, on the evidence, entitled to recover on a contract by which defendant in part consideration for certain corporate stock purchased from plaintiff, agreed to pay one-half of any sum plaintiff might pay in settlement, in good faith, of a claimed lien on the stock, not exceeding a stated amount.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 504, 505; Dec. Dig. § 121.*]

In Error to the District Court of the United States for the Northern District of New York.

Action at law by Conrad C. Bickel against Nash Rockwood. Trial to court. Judgment for defendant, and plaintiff brings error. Reversed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rc⊃'r Indexes

E. B. Boise and Arthur S. Hamlin, both of New York City, for plaintiff in error.

Charles Haldane, of New York City, and Edgar T. Brackett, of Saratoga Springs, N. Y. (L. B. McKelvey, of Saratoga Springs, N. Y., of counsel), for defendant in error.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. In October, 1908, the defendant, Rockwood, and his partner, Scott, bought a one-half interest in 1,047 shares of the capital stock of the Provident Savings Life Assurance Society of New York, owned by the plaintiff, Bickel. They knew that one Day claimed to have a lien upon or claim against the stock by virtue of certain transactions with Bickel in connection with it. Subsequently Rockwood took over Scott's interest and began negotiations to get Bickel's interests. January 11, 1909, this resulted in a formal bill of sale, whereby Bickel sold to Rockwood—

"all of his right, title, and interest of every name and nature whatsoever of, in, and to 1,047 shares of the capital stock of the Provident Savings Society, except only his right as pledgee in said 200 shares as provided in clause 4 of this agreement."

At the same time Rockwood signed the following letter, prepared by Bickel's attorney:

"In connection with the contract made this day between C. C. Bickel and myself, and as a part of the consideration for the execution by Mr. Bickel of the contract. I make the following agreement:

"I am informed that one Floyd Day is threatening to assert some sort of a claim against Mr. Bickel, which claim Mr. Bickel disputes and proposes to resist, or, if he thinks proper, to compromise it. As an inducement and a part of the consideration for signing the above agreement, I now promise that I will pay Mr. Bickel one-half of any amount which Day may recover against him, or which he may pay to Day on account of that claim, such one-half to be not over seventy-five hundred ($7,500) dollars.

"It is, of course, understood that Mr. Bickel will in good faith resist the Day claim to the best of his ability; but if Mr. Bickel should feel that it was wisest to make some compromise with Day, rather than to litigate the matter to judgment, he has the liberty to make any compromise which he in good faith thinks he ought to make, and I will still pay one-half of any such sum that he pays to Day, whether by way of compromise or as the result of litigation, except that one-half shall not exceed the sum of seventy-five hundred ($7,500) dollars. If Mr. Bickel has to pay more than fifteen thousand ($15,000) dollars, he must pay all of it himself, except seventy-five hundred ($7,500) dollars, and if he settles it for fifteen thousand ($15,000) dollars, or less than fifteen thousand ($15,000) dollars, then I am only to pay one-half of the total amount he may have to pay Day.

"It is agreed as a part of this letter that I have always and do now absolutely disclaim and repudiate any liability of any sort, name, or nature to Floyd Day on account of any transaction which he may have ever had with C. C. Bickel or any one else."

Rockwood subsequently acquired all the remaining shares of the Provident Company, with the intention of selling the company, but found himself embarrassed in doing so by Day's claim. He accordingly kept pressing Bickel and his attorney to settle with Day. July 21, 1910, a meeting for this purpose was held at Louisville, Ky., at which Bickel offered to pay Day $10,000 in settlement, which Day refused,

and thereupon Bickel said that unless Day accepted his offer on or before September 1, 1910, he would never pay him anything, and that, if Rockwood wanted to make any settlement, it would be on his own account. Subsequently both Bickel and his attorney said to Rockwood from time to time that he might make any settlement he wished, but that Bickel would never pay anything in settlement.

February 18, 1911, Rockwood obtained a release from Day of all claims against Rockwood and Scott arising out of the stock transaction, but expressly reserving his claim against everyone else. It was stipulated between them that Rockwood should not inform Bickel of this settlement, so that Day might go on and get whatever settlement he could from Bickel.

March 25, 1911, Bickel's attorney wrote Rockwood a letter, concluding as follows:

"Day has been rearing around here recently again, but so far, as you know, neither you nor Mr. Bickel have had to pay anything.

"Is it still your wish to settle with Day, or do you now feel, in view of the sale of the Provident Savings, that you no longer care what Day does?"

April 3d Rockwood replied in a letter, concluding:

"As to the Day matter, can only say that I have always felt that Mr. Bickel should do something about that matter and get it out of the way finally."

Thereupon Bickel settled with Day by paying him $6,500 in cash and surrendering a certain draft and two notes which were additional consideration moving from him to Day. The only claim against Bickel which Day released was that connected with the 1,047 shares of Provident Association stock. When Bickel called upon Rockwood for $3,250 his half of this settlement, Rockwood refused to pay, and this action has been brought to recover the same. The parties waived a jury in writing, and the cause was decided by the District Judge, who made findings of fact and special conclusions of law.

We are at liberty to pass upon any exceptions taken during the course of the trial, and also to determine whether there was any evidence to support the findings of fact excepted to. U. S. Rev. St. § 700 (U. S. Comp. St. 1901, p. 570). In the course of the trial the District Judge admitted, over the plaintiff's objection and exception, Day's release to Rockwood and also a good deal of testimony concerning it, and among his findings of fact were:

"Seventeenth. That after the receipt of said letter dated July 25, 1910, written by the said Bullitt to the said defendant, Rockwood, the said Rockwood, during the fall and winter of the year 1910, had several conferences with the said Bullitt, in which the said Bullitt repeatedly stated, in substance, that no settlement having been made with Day of the claim mentioned in the letter contract by September 1, 1910, the date mentioned in the Louisville conference, the said Bickel would not pay anything upon the said claim, and that if the said claim were settled by Rockwood, it must be done upon his (Rockwood's) own responsibility, and that the said Bickel would have nothing to do with such settlement and would not pay any part thereof, and that the agreement between the said Bickel and the said Rockwood in regard to such settlement was considered abandoned by the said Bickel, and of no further force or effect."

"Twenty-Ninth. That the said Bickel failed to perform the terms of the letter contract on his part to be performed, in that he did not in good faith

resist the Day claim mentioned therein, and the $6,500 paid by the said Bickel to the said Day was not paid as a compromise made in good faith by the said Bickel.

"Thirtieth. That the said Rockwood fully performed the terms and conditions and obligations of the letter contract in suit, on his part to be performed, until the period commencing September 1, 1910, at which said time, by the express declarations and representations of the said Bickel, the aforesaid letter contract and the obligations thereof were renounced, abandoned, and terminated by the said Bickel."

"Thirty-Second. That said letter was not understood by the said Bickel, or his attorney, as an acknowledgment of any obligation on the part of the said Rockwood to pay any part of any settlement to be made with Day, and the said Bickel did not in good faith, nor did his attorney, rely thereon as a promise on the part of said Rockwood to share in any settlement which said Bickel and his attorney might make with the said Day."

And among his conclusions of law were:

"First. That the plaintiff, Bickel, herein did not at any time in good faith make any compromise of the Day claim mentioned in the letter contract herein."

"Fifth. That by the acts and conduct of said Bickel and his attorney at the conference in Louisville, in July, 1910, and in subsequent conversations with the said Rockwood and his associate, Lockwood, the said plaintiff herein abandoned the letter contract in suit, and expressly renounced the obligations thereof."

"Eighth. That by reason of the acts and conduct of said Bickel and his attorney, and their declarations of an intention to abandon the said contract and to renounce the same, the said Rockwood was excused from further performance of the terms thereof, and was relieved from any obligation thereunder.

"Ninth. That the said Bickel is not legally entitled to recover from said Rockwood any portion of the sum of $6,500 paid to Day in April, 1911, and that the same was not a compromise in good faith of the Day claim mentioned in the letter contract herein."

Accordingly he dismissed the complaint.

It seems to us quite clear that, when Rockwood bought out Bickel's remaining one-half interest in the Provident Association stock, he took the risk of Day's claim. If to disembarrass himself of it he paid Day anything, he certainly could not under that instrument alone reclaim anything of Bickel. The letter of January 11, 1909, did not alter his situation to his advantage in any respect. It was dictated by Bickel's attorney and was clearly intended solely for Bickel's protection. It recites that in further consideration for the stock Rockwood would pay Bickel "half of any amount which Day may recover against him or which he may pay to Day on account of that claim, such one-half not to be over $7,500." It was further provided that Bickel should resist the claim in good faith, but that he might compromise in good faith, if he thought it better than to litigate. Not a word in it pledges Bickel to pay anything on account of any settlement Rockwood might make with Day, nor any obligation on Bickel's part to settle Day's claim for the purpose of obliging Rockwood. Bickel did resist the claim and refused to compromise until he did so after receiving Rockwood's letter of April 3d, which was certainly calculated to induce him to settle. Rockwood says that he only meant in this letter to say that in his opinion Bickel ought to pay Day something. If so, he was liable to pay one-half of whatever Bickel paid.

We think it was error to admit the settlement between Rockwood and Day in evidence or any testimony about it. Of course Rockwood always had the right, without leave from Bickel, to disembarrass himself of Day's claim against the stock. This is what he did, but Day's claim against Bickel was reserved; it being plainly understood that Day should proceed to collect it from Bickel. The settlement between Rockwood and Day in no way affected Bickel's rights or Rockwood's liability under the letter of January 11, 1909.

We think it was error to hold that Bickel's statement that, if Day did not accept $10,000 in settlement before September 1, 1909, he would never pay him anything in settlement, was an abrogation of the letter contract. This is exactly what Bickel had a right to do under the letter. He was bound to resist, but had the privilege of settling, provided he did so in good faith. If Day had sued Bickel, and recovered and collected a judgment of $6,500, could it be pretended that Rockwood would be relieved from paying one-half that judgment because of what Bickel had said?

We find no evidence to support the statement in the seventeenth and thirtieth findings that Bickel considered the letter contract of January 11, 1909, abandoned, or that the letter had been abrogated by the parties, nor do we discover any evidence to support the twenty-ninth finding that Bickel did not resist Day's claim in good faith and settled it in bad faith.

The judgment is reversed.