## DOAK v. HAMILTON.

(Circuit Court of Appeals, Fourth Circuit. November 19, 1926.)

No. 2508.

1. **Courts ⬅➡365—Decisions of state Supreme Court as to law of real estate are binding on federal court.**

Decisions of state Supreme Court as to the law of real estate are binding on federal court, in suit to remove cloud from title to property.

2. **Courts ⬅➡343—After conveyance subject to rights of lessee, owner lost right to demand cancellation of lease, possession of property, and damages and rents accruing after transfer (equity rule 37; C. S. N. C. §§ 446, 460, 461).**

Under equity rule 37, requiring prosecution of actions in name of real party in suit, and C. S. N. C. §§ 446, 460, 461, relative thereto, plaintiff, in suit to remove cloud from title, occasioned by lease alleged to have been forfeited, and to secure compensation for damages to premises, and payment of rents accruing to terms of lease, lost right, after conveyance excepting rights of lessee, to cancellation of lease, possession of property, and for damages and rents accruing after transfer.

3. **Abatement and revival ⬅➡41—Complainant, after parting with interest in subject-matter of litigation, cannot further prosecute suit.**

Complainant in equity, suing in his own right and alone, cannot, after he has parted with full interest in subject-matter of litigation, further prosecute the suit, and, if it is to be continued, transferee must come in by appropriate proceedings.

4. **Ejectment ⬅➡17—Plaintiff, in action to recover land, must have right to possession at time of trial (C. S. N. C. §§ 446, 460, 461).**

Under C. S. N. C. §§ 446, 460, 461, as construed by state Supreme Court, plaintiff, in action to recover land, must have right to possession, not only at institution of suit, but at time of trial also.

5. **Equity ⬅➡39(1)—Court in equity, having properly acquired jurisdiction, will retain control thereof and do complete justice.**

Federal court in equity, having acquired jurisdiction in proper cause, will retain control of parties and subject-matter, and do complete justice to all concerned, even to extent of enforcing purely legal rights.

6. **Quieting title ⬅➡12(1)—Equity has not jurisdiction of suit to remove cloud, where plaintiff is not in possession.**

Equity may not grant relief in suit seeking to remove cloud on title to property where plaintiff is not in possession.

7. **Landlord and tenant ⬅➡111—Ordinarily, equity will relieve against forfeiture for breach of covenant to pay rent on payment or tender of arrears, but will not relieve for breach of covenant to repair.**

Ordinarily, equity will relieve against a forfeiture for breach of covenant to pay rent, if payment or tender of arrears of rent and interest is made, but will not relieve for forfeiture of breach of covenant to repair.

8. **Landlord and tenant ⬅➡111—Ordinarily owner has adequate remedy at law for forfeiture of lease.**

Ordinarily owner has adequate remedy at law in action of ejectment for forfeiture of lease.

9. **Courts ⬅➡406(2)—On failure of record to state facts on which it may be determined whether equitable relief was necessary, case will be remanded by Circuit Court of Appeals for further proceedings and determination thereof (equity rule 22).**

Where record does not contain sufficient facts relating to rents and repair so that for-

feiture of lease can be determined, Circuit Court of Appeals will not determine whether plaintiff was entitled to relief in equity, but will remand for further proceedings and transfer to law side of court under equity rule 22, if it then appears that equitable relief is not necessary.

**10. Accord and satisfaction ☞7(1)—Owner's acceptance of part of royalty or rental does not discharge lessee from obligation to pay balance.**

Owner's acceptance of part of royalty or rental may be considered in determining waiver of right to forfeiture of lease, but does not discharge lessee from obligation to pay balance.

**11. Courts ☞347—Owner may recover rents accruing after filing suit as well as amount due at institution thereof (equity rules 19, 34; C. S. N. C. §§ 2365–2371).**

Under equity rules 19, 34, relative to amendment of pleadings, owner may recover rent and damages due, not only at institution of suit, but also those accruing after filing of bill, which is also true if suit is transferred to law side of court, in view of C. S. N. C. §§ 2365–2371, authorizing damages to time of trial in ejectment to enforce forfeiture.

Appeal from the District Court of the United States for the Western District of North Carolina, at Asheville; Edwin Y. Webb, Judge.

Suit by Mrs. Katherine E. Hamilton against William C. Doak. Decree for plaintiff, and defendant appeals. Reversed and remanded.

Marcus Erwin and Frederick W. Thomas, both of Asheville, N. C., for appellant.

Joseph F. Ford, of Asheville, N. C. (Lee, Ford & Coxe, of Asheville, N. C., on the brief), for appellee.

Before WADDILL and PARKER, Circuit Judges, and SOPER, District Judge.

SOPER, District Judge. The bill of complaint in this case, alleging that the defendant was in unlawful possession of certain land belonging to the plaintiff, was brought for the purpose of securing an injunction permanently enjoining the defendant from using and operating a quarry located on the premises, and from trespassing thereon, to remove a cloud from the title to the property, to secure compensation for damages to the buildings resulting from the operations of the defendant, and to obtain payment for certain stone removed from the quarry, and for other and further relief. An answer was filed, denying that the plaintiff was entitled to possession of the property, or to damages or payment of any sort, but claiming, by way of cross relief, that the defendant was entitled to damages for the interference to his business occasioned by a restraining order passed in the case at the instance of the plaintiff.

On March 15, 1920, Mrs. Katherine E. Hamilton, the plaintiff, sold to the defendant, William C. Doak, certain quarry machinery situated at the quarry, for the sum of $4,000; and, on the same day, Mary Hamilton, the plaintiff's daughter, leased to the defendant "that certain stone quarry, together with fifteen acres of land, located on Beaucatcher Mountain, on both sides of the road leading from Atkins street entrance to the home of the party of the first part on said mountain, for a term of five years from the date hereof," with the right, at the expiration of the lease, to renew it upon the same terms and conditions for an additional period of five years. The lessee agreed to pay to the lessor 20 cents per ton for stone quarried and removed from the premises, in monthly payments, stipulating that, if in any one month the royalties did not amount to the sum of $100, that sum should be paid as a minimum rental. The lessee also agreed to keep the buildings on the premises in good repair, and to remove the waste from the operation of the quarry, so that it would not accumulate upon the premises. The lease also provided that the lessee should have the option to purchase, at any time during the term of the lease or the renewal thereof, the quarry property leased, "together with fifteen acres of land covering the quarry, located on both sides of the road leading up to the mountain, at the price of $16,000." Finally it was agreed that, if the lessee should fail to keep and observe his covenants and agreements, or should fail to pay the rentals as stipulated, the lease should immediately terminate, and all rights of the lessee thereunder should cease.

On July 7, 1920, the lessor conveyed the reversion of the property to her mother, and all further proceedings in the matter were carried on between the latter, as successor to the lessor, and the defendant. Doak took possession on May 1, 1920, and from the beginning, it was a very difficult matter to collect from him the rentals or royalties due under the lease. Certain conferences took place between the parties, and a full settlement of all differences was made as of October 1, 1921. But the defendant did not thereafter comply with the terms of the lease; and consequently the bill of complaint, praying the relief above described, was filed on April 12, 1923, in the Superior Court of Buncombe County, North Carolina. The suit was subsequently removed to the District Court of the United States for the Western District of North Carolina.

On January 3, 1924, Mrs. Hamilton conveyed to one Ralph B. Arbogast certain tracts of land adjoining one another, amongst which were the leased premises.

The case was referred by the District Court to a standing master, who made a report of his findings of fact and conclusions of law on September 25, 1925. He found, in substance, that prior to the execution of the lease, the defendant, together with a real estate agent and the plaintiff, viewed the quarry premises and spent a little time looking over the properties and the boundaries; but the quarry premises were never described or laid out by definite lines, metes, or bounds. The master further found that in 1920, when the lease was made, the buildings and equipment of the owner were not new, but were susceptible of use for quarry purposes; that the defendant had not kept them in repair, as he agreed, with the result that in February, 1925, and in September, 1925, when the report was filed, they were in a dilapidated condition, from which the plaintiff suffered damages to the extent of $250. He also found that the defendant had failed to remove the waste or débris from the quarry, as he had agreed, and thereby the plaintiff was damaged in the additional sum of $250. He made no findings as to the condition of the buildings or waste at the time the suit was begun. On the other hand, he found that the defendant had been damaged to the extent of $500 by the restraining order secured by the plaintiff.

It was also found that for a period of eighteen months prior to the suit—that is, from October, 1921, to March, 1923, inclusive, the defendant made and the plaintiff accepted as royalty on the stone quarried and removed, eighteen payments amounting to the aggregate sum of $1,715.20. The defendant failed to pay the minimum monthly royalty of $100 in July and December, 1922, and January and February of 1923, and paid only $427.60 between October, 1921, and March, 1922. The record does not show in what months in the last mentioned period the royalty was deficient. For the nine months between the institution of the suit and the transfer to Arbogast—that is, from April to December, 1923—the defendant made nine payments amounting to $727, but failed to pay the minimum royalty in seven months. These payments (except that for December, 1923, which was payable on or before January 10, 1924) were also accepted by the plaintiff. After the transfer, the plaintiff refused to accept the royalties, and the money was paid into court. For a period of twenty months, from January, 1924, to August, 1925, the defendant made twenty payments, amounting to $1,172.50, but failed in each month to pay the minimum royalty. The master found that the plaintiff at no time agreed to relinquish the minimum monthly royalty, and therefore held that the plaintiff was entitled to recover the amount of the deficiency for every month in which it occurred, and declared that the sum thus due was $1,290.80, beginning with the month of July, 1922, and extending through the month of August, 1925. It may be noted in passing that it is not apparent from the record how this figure was reached. The deficiency which occurred in the period from October, 1921, to March, 1922, seems to have been ignored; and there are mistakes of addition in the record so obvious as to lead one to suppose that errors by the copyist or printer have been made. We are unable, from the record before us, to determine precisely what royalty payments were made or accepted. The case is submitted to us on the master's findings of fact and there is no evidence in the record except that which was introduced to establish the boundaries of the property.

After the master's report, there was a hearing before the District Court and a final decree which recited that the description in the lease was fatally defective and contained no definite description by metes and bounds, or any sufficient reference by which the fifteen acres of land mentioned in the lease could be identified or located; that the defendant had broken the covenants on his part to pay the minimum rental, to keep the buildings in good condition, and to keep all dirt and débris removed from the premises; and that the plaintiff had the right under the lease to declare and had declared the contract terminated. Therefore it was decreed that the lease constituted a cloud upon the plaintiff's title to the property, was void and of no effect, and should be canceled of record; that the plaintiff was entitled to the sum of $1,-290.80 for damages to the property and for rentals due for the occupancy and use of the same, and that the funds paid into the hands of the court, during the pendency of the action, belonged to the plaintiff as royalties from the quarry, and should be paid to her. It was further ordered that the defendant immediately deliver possession of the quarry and premises to the plaintiff.

From this decree the defendant appealed, contending that no relief should have been granted to the plaintiff but the bill of complaint should have been dismissed, because after the suit was begun, the plaintiff conveyed all her interest in the land to Arbogast.

The statement of fact is correct, for the master found "that on or about the 3d day of January, 1924, the plaintiff conveyed to one Ralph B. Arbogast of Buncombe county, N. C., certain tracts of land, among which tracts were the premises leased on March 13, 1920, by Mary Hamilton to the defendant; the said deed of plaintiff to Arbogast containing, however, this clause: 'Excepting, however, such rights as one William C. Doak may have in and to what is known as the rock quarry by reason of a certain lease and contract made and entered into by and between Mary Hamilton and the said William C. Doak in March, 1920.'" Obviously the interest of the lessor was not thereby reserved. The only interest not conveyed to Arbogast was that which could not be conveyed because it had already been granted to Doak. The exception in his favor was no doubt inserted in order to call his outstanding interest to the attention of the grantee, and to except it from the operation of the grantor's warranties.

[1, 2] The rule laid down by the Supreme Court of North Carolina, whose decisions as to the law of real estate are binding on us in a case of this kind (Guffey v. Smith, 237 U. S. 101, 35 S. Ct. 526, 59 L. Ed. 856), is thus set out in Redding v. Vogt, 140 N. C. 562, 571, 53 S. E. 337, 340 (6 Ann. Cas. 312).

"It is a rule that a reservation must be to the grantor and not to a stranger, but, while a reservation will not give title to a stranger, it may operate, when so intended by the parties, as an exception from the thing granted, and as notice to the grantee of adverse claims as to the thing excepted or 'reserved.' It must not be understood, however, that the exception in such case gives title to such third person, for no one not a party to the deed can acquire any rights or interests in the land by virtue of any exception therein contained more than by a reservation; yet, where third parties already possess rights adverse to those conveyed, an exception may properly be made for the purpose of relieving the grantor from liability on his covenants. The exception, in such event, operates as a recognition of the existing rights of third persons, and serves to convey notice to the grantee."

See, also, Wall v. Wall, 126 N. C. 405, 35 S. E. 811.

[3] The principle is elementary that a complainant in equity, suing in his own right and alone, cannot, after he has parted with his whole interest in the subject-matter of the litigation, further prosecute the suit; and, if it is to be continued, the transferee must come in by appropriate proceedings to the end that the complainant on the record shall be one who has a real interest in the controversy. Automatic Switch Co. v. Cutler-Hammer Mfg. Co., 147 F. 250, 77 C. C. A. 176; Id., 148 F. 1017, 79 C. C. A. 531; F. A. Mfg. Co. v. Hayden & Clemons (C. C. A.) 273 F. 374; Pittsburg S. & N. R. Co. v. Fiske, 178 F. 66, 101 C. C. A. 560; Denaro v. McLaren (C. C. A.) 9 F.(2d) 328; Carson v. American Smelting & Refining Co. (C. C. A.) 11 F.(2d) 764. Equity rule 37 provides that every action shall be prosecuted in the name of the real party to the suit, and that any person may at any time be made a party where his presence is necessary or proper to a complete determination of the cause.

[4] The statutes of North Carolina do not alter the situation. Section 461 of the Consolidated Statutes of North Carolina of 1919 provides that no action abates by the transfer of any interest therein if the cause of action survives or continues, and that the cause of action shall be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action. Section 460 provides that the court may determine any controversy before it, when it can be done without prejudice to the rights of others, but, when a complete determination of the controversy cannot be made without the presence of other parties, the court must cause them to be brought in. Section 446 provides that every action must be prosecuted in the name of the real party in interest, except as otherwise provided. If these provisions confer a substantive right, the federal courts will enforce them (Louisville & Nashville R. Co. v. Western Union Tel. Co., 234 U. S. 369, 34 S. Ct. 810, 58 L. Ed. 1356); but, if they give merely a remedial right to proceed, they do not affect the procedure of the federal court sitting in equity (Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 43 S. Ct. 454, 67 L. Ed 763). It is not necessary in this case to decide into which category they fall, for the Supreme Court of North Carolina, construing them together, has held that, in an action to recover land, the plaintiff must have the right to possession, not only at the institution of the suit, but at the time of trial also. Arrington v. Arrington, 114 N. C. 120, 19 S. E. 278; Burnett v. Lyman, 141 N. C. 500, 54 S. E. 412, 115 Am. St. Rep. 691; Moore v. Moore, 151 N. C. 555, 66 S. E. 598.

The plaintiff did not lose her whole interest in the controversy by her deed to Arbogast, but she did lose a substantial part. Having transferred the reversion in the land, she was no longer concerned with the inadequate description of the leased premises; nor could

she enforce the forfeiture or cancellation of the contract for breach of its conditions. 2 Tiffany on Landlord and Tenant, § 1385; Baltimore v. White, 2 Gill (Md.) 444. She lost the right to a decree for possession of the property when she parted with the title. She retained the right to recover the rents and damages which had accrued when the deed was made, but those which thereafter accrued belonged, under the law of North Carolina, to Arbogast, as the person then owning the land. Kornegay v. Collier, 65 N. C. 69; Bullard v. Johnson, 65 N. C. 436; Wilcoxon v. Donelly, 90 N. C. 245. See, also, Seymour v. Cummins, 119 Ind. 148, 21 N. E. 549, 5 L. R. A. 126; Glidden v. Second Avenue Investment Co., 125 Minn. 471, 147 N. W. 658, L. R. A. 1915C, 190. It follows that so much of the decree of the court as awarded to the plaintiff cancellation of the lease, possession of the property, and damages and rents accruing after the transfer, was erroneous.

[5] But the defendant goes further. He contends that, since the plaintiff's need for equitable relief was removed by her deed to Arbogast, she now has an adequate remedy at law for the incidental damages, and therefore the bill in equity should be dismissed. The rule is that, once a federal court in equity acquires jurisdiction in a proper cause, it will retain control of the parties and the subject-matter and do complete justice to all concerned, even to the extent of enforcing purely legal rights. It is not sufficient that the bill states a case for equitable relief. The proof must establish it. The test is whether the facts existing when the action was begun were sufficient to confer jurisdiction on the court. If the plaintiff was then entitled to relief in equity, the jurisdiction will not be defeated by subsequent events. Thus, it has been held in a suit in equity to restrain the infringement of letters patent, and to recover profits and damages, that, if the patent expires or is transferred by the plaintiff during the progress of the suit, the bill will not be dismissed for want of jurisdiction, but the court may, without enjoining the defendant, proceed to grant the other incidental relief sought. Mitchell v. Dowell, 105 U. S. 430, 26 L. Ed. 1142; American Falls Milling Co. v. Standard B. & D. Co., 248 F. 487, 160 C. C. A. 497; Munger Laundry Co. v. National Marking Machine Co., 252 F. 144, 164 C. C. A. 256; Clark v. Wooster, 119 U. S. 322, 7 S. Ct. 217, 30 L. Ed. 392; Busch v. Jones, 184 U. S. 598, 22 S. Ct. 511, 46 L. Ed. 707; New York B. & P. Co. v. N. J. Car Spring & R. Co. (C. C.) 47 F. 504; Id., 48 F. 559; Herman v. Detroit Shipbuilding Co. (D. C.) 295 F. 423; Cartwright

v. Southern Pacific Co. (D. C.) 206 F. 234; Geddes v. Anaconda Mining Co., 254 U. S. 593, 41 S. Ct. 209, 65 L. Ed. 425.

[6] Was the plaintiff entitled, on the facts existing when the suit was begun, to the interposition of a court of equity? The bill of complaint in terms sought to remove a cloud upon the title to the property, and this relief equity unquestionably may grant in a proper case. But the jurisdiction is dependent upon possession of the property by the plaintiff, which in this case did not exist. In Whitehead v. Shattuck, 138 U. S. 146, 11 S. Ct. 276, 34 L. Ed. 873, it was held that the owner of certain lands, who brought a bill in equity complaining that the defendants were in possession of the property and were claiming title under fraudulent and void documents, was not entitled to a decree to remove the cloud from the title, because, not being in possession, he had an adequate remedy by an action of ejectment at law. See, also, Big Six Devel. Co. v. Mitchell, 138 F. 279, 70 C. C. A. 569, 1 L. R. A. (N. S.) 332; Wehrman v. Conklin, 155 U. S. 314, 15 S. Ct. 129, 39 L. Ed. 167; Lancaster v. Kathleen Oil Co., 241 U. S. 551, 36 S. Ct. 711, 60 L. Ed. 1161; Textor v. Shipley, 77 Md. 473, 26 A. 1019, 28 A. 1060.

[7] But the suit at bar may also be considered as a proceeding in equity for the forfeiture or cancellation of the lease. The record seems to show that, during the period from October, 1921, to August, 1925, the defendant was guilty of acts which were grounds for forfeiture under the express terms of the lease. He failed to pay the minimum royalties, and failed to keep the property in repair. Ordinarily equity, far from decreeing, will relieve against a forfeiture for breach of a covenant to pay rent, if payment or tender of all arrears of rent and interest is made, but will not relieve against a forfeiture for breach of a covenant to repair. Pomeroy, Equity Jurisprudence (4th Ed.) §§ 453, 454; Kann v. King, 204 U. S. 43, 54, 27 S. Ct. 213, 51 L. Ed. 360. There was no tender of the minimum rent or royalty due in this case, but a continued failure to pay. The lessee not only failed to work the quarry himself to the extent agreed upon, but, by retaining possession, refused to permit any one else to do so. He allowed the buildings to become dilapidated. This behavior would seem to be so unreasonable as to justify, under the decisions of the Supreme Court of North Carolina, a forfeiture of the lease (Conrad v. Morehead, 89 N. C. 31; Maxwell v. Todd, 112 N. C. 677, 16 S. E. 926; Hawkins v. Pepper, 117 N. C. 407, 23 S. E. 434), but we refrain from a de-

cision of the point, since the conditions existing at the beginning of the suit are not sufficiently shown by the record.

[8] Even if grounds of forfeiture of a lease exist, an action in equity does not necessarily lie, for here also the owner ordinarily has an adequate remedy at law in an action of ejectment. Thompson on Real Property, § 1433; Tiffany on Landlord and Tenant, 1405, 1406. Indeed it has sometimes been laid down that equity will never, under any circumstances, lend its aid to enforce a forfeiture. Pomeroy, Equity Jurisprudence, § 459. The rule, however, is not absolute or inflexible, since every forfeiture is not harsh and oppressive, and in cases, otherwise cognizable in equity, there is no insuperable objection to the enforcement of a forfeiture when it is consonant with the principles of right, justice, and morality. In Brewster v. Lanyon Zinc Co., 140 F. 801, 72 C. C. A. 213, Circuit Judge, now Mr. Justice Van Devanter, speaking for the court, held that the prolonged failure of the lessee (in an oil and gas lease), to prosecute the work of development and production with reasonable diligence, was a plain and substantial breach of the contract, and, since the deposits of oil and gas were subject to waste because of the development of adjoining territory, the lease embarrassed, if it did not prevent, the exercise by the owner of the right to dispose of the deposits. Therefore the case called for a measure of relief not obtainable at law, and entitled the lessor to enforce the remedy of forfeiture for default provided by the lease, and to the cancellation of it as a cloud upon the title. This case has been much cited by the federal courts, and the rule which it lays down has been followed in Lindeke v. Associates Realty Co., 146 F. 639, 77 C. C. A. 56; Wilmore Coal Co. v. Brown (C. C.) 147 F. 942; Van Sice v. Ibex Mining Co., 173 F. 897, 97 C. C. A. 587; Bickel v. Rockwood, 209 F. 187, 126 C. C. A. 135; In re Larkey (D. C.) 214 F. 872; Towle v. Pullen, 238 F. 110, 151 C. C. A. 183; Semidey v. Central Aguirre Co., 239 F. 614, 152 C. C. A. 444. See, also, Thompson on Real Property, vol. 6, c. 80, § 5171.

[9] We are embarrassed in the application of this rule to the facts of the case at bar by the inadequacy of the record before us. The facts relating to rents and repairs which existed when the suit was begun cannot be definitely ascertained. The point was not argued either in the briefs or at the bar. The present owner of the reversion, who is the only person entitled to enforce a forfeiture, is not before the court. Under all these circumstances, we are unwilling to decide whether the plaintiff was entitled to relief in equity

when she began the suit. Nor do we express an opinion as to the right of the grantee of the reversion to proceed in equity upon the state of facts now existing. The case must be sent back now for further proceedings, and an opportunity will be afforded the District Court to determine whether there was ground for the interference of equity at the commencement of the action. If it shall appear that the plaintiff was not then entitled to equitable relief, the case may be transferred to the law side of the court. Equity rule 22 provides that, if at any time it appears that a suit commenced in equity should have been brought as an action on the law side of the court, it shall be forthwith transferred to the law side and be there proceeded with, with only such alterations in the pleadings as shall be essential. Knoxville v. Southern Paving Co. (D. C.) 220 F. 236; Hatcher v. Hendrie, 133 F. 267, 68 C. C. A. 19. Simkins, "A Federal Equity Suit," 27 to 29.

[10] The defendant contends, as to the amount of recovery, that the plaintiff is not entitled to the difference between the monthly payments actually made and the minimum monthly payment of $100, specified in the lease, because she waived this provision by accepting the defendant's checks for less. He relies upon the rule laid down in 21 Corpus Juris, 104, § 80, that, if a breach of covenant sufficient to cause a forfeiture has occurred, and the party entitled thereto waives or acquiesces in it, he will be precluded from enforcing it. Thus, if a landlord receives rent after acts of forfeiture by a tenant, the right to insist upon the forfeiture is waived, unless the rent accepted has become due after the institution of the suit or the cause of forfeiture is a continuing breach of some covenant in the lease. See, also, Tiffany on Landlord and Tenant, 1387-1390. Big Six Devel. Co. v. Mitchell, supra; Del Toro v. Juncos Central Co. (C. C. A.) 276 F. 894; Lindeke v. Associates Realty Co., supra; Kenny v. Seu Si Lun, 101 Minn. 253, 112 N. W. 220, 11 L. R. A. (N. S.) 831, 11 Ann. Cas. 60. The acceptance by the plaintiff both before and after the institution of the suit at bar, of royalties for the stone actually quarried and removed, should be considered by the District Court in determining whether the plaintiff waived the right to forfeiture of the lease; but that matter has no bearing on the rights of the plaintiff to collect the minimum royalties. The acceptance of part of the royalty or rental did not discharge the defendant from the obligation to pay the rest.

[11] The point is also made that it was error on the part of the District Court to include in its decree, not only the amount of the

rent and damages due at the institution of the suit, but also the amount which fell due between the institution of the suit and the decree of the court. It is generally held in equity that a decree operates upon the parties and subject-matter as they stood at the commencement of the suit. But, if there is a change in the ultimate rights of the parties, which is brought to the knowledge of the court by appropriate pleading, the decree is addressed to the rights existing at the determination of the suit, provided there was foundation for the suit when it was commenced and the relief is pertinent to that sought by the bill. 21 Corpus Juris, 663. Thus it is held, in foreclosure proceedings, that the amount due on the mortgage and the rights of the parties are to be determined at the date of the decree and not at the commencement of the proceedings. Clark v. Clark, 62 N. H. 267; Johnson v. Van Velsor, 43 Mich. 208, 5 N. W. 265; Jordan v. Clark, 16 N. J. Eq. 243. Rents accruing after the filing of a bill may be allowed where the decree for rent was proper under the pleadings. Kelly v. Galbraith, 186 Ill. 593, 58 N. E. 431. Damages may be allowed down to the time of trial. Hunter v. Manhattan R. Co., 141 N. Y. 281, 36 N. E. 400. Equity rule 34 provides that, upon the application of either party, the court may permit him to file and serve a supplemental pleading, alleging material facts occurring after his formal pleading. Rule 19 provides that the court may permit any pleading to be amended or material supplemental matter to be set forth in an amended or supplemental pleading. See Simkins, "A Federal Equity Suit," 366 to 368. We think, therefore, that, if the suit be continued in equity and appropriate proceedings be had, rents and damages to the date of the plaintiff's transfer to Doak should be allowed. Of course allowance should be made in the decree for any damages which, in the opinion of the District Court, may be due to the defendant by reason of the restraining order secured by the plaintiff. On this point we express no opinion.

If the suit is transferred to the law side of the court, the same rule should be followed, for it is provided by the Consolidated Statutes of North Carolina of 1919, §§ 2365–2371, that, when ejectment is brought to enforce a forfeiture, damages shall be assessed to the time of trial. See Whissenhunt v. Jones, 78 N. C. 361; Burnett v. Nicholson, 86 N. C. 99; Pearson v. Carr, 97 N. C. 194, 1 S. E. 916.

Reversed and remanded for further proceedings.

Reversed.