(No. 11658.—Reversed and remanded.)

THE COUNTY OF FRANKLIN, Plaintiff in Error, *vs.* WILLIAM B. BLAKE *et al.* Defendants in Error.

*Opinion filed April 17, 1918.*

1. CORPORATIONS—*what is sufficient averment that agricultural society is a corporation.* An allegation that an agricultural society was organized for the promotion of agriculture, horticulture, manufacturing, mechanics and household arts under and by authority of the act of 1857, and that it became and is a body corporate and politic, is a sufficient averment that said society is a corporation.

2. SAME—*agricultural society organized under act of 1857 is a charitable corporation.* The primary purpose of an agricultural society organized under the act of 1857 is not the pecuniary profit of its members but the promotion of public benefits, and in its essential elements such a society is a charitable corporation.

3. SAME—*operation of common law rule that real estate of dissolved corporation reverts to grantor.* The common law rule that the real estate of corporations remaining unsold upon dissolution reverts to the original grantor or his heirs has become obsolete as to corporations organized for profit but is still applied as to land donated to aid a corporation organized for a charitable or public purpose though not as to land purchased for a reasonable value.

4. SAME—*when real estate of agricultural society escheats to county.* Where an agricultural society organized under the act of 1857 has ceased to operate and for more than five years has abandoned its real estate for which it had paid an adequate price, the real estate so abandoned will escheat to the county, under the statute on escheats, where there are no members of the society having any equitable claims against the land.

WRIT OF ERROR to the Circuit Court of Franklin county; the Hon. JULIUS C. KERN, Judge, presiding.

ROY MARTIN, State's Attorney, and W. F. SPILLER, for plaintiff in error.

HART & HART, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Franklin county, plaintiff in error here, by bill in equity filed in the circuit court of said county sought to have declared as escheated to the county certain real estate described in said bill. A demurrer was sustained to the bill and the bill dismissed. On appeal to this court the decree of the circuit court was affirmed on the ground that proceedings for escheated property, being statutory, can only be prosecuted in a court of law. (*Franklin County* v. *Blake,* 247 Ill. 500.) Subsequently an information was filed in the Franklin county circuit court seeking to have declared as escheated the same tract of land. A demurrer was sustained to the information, and on appeal to this court the appeal was dismissed because no final judgment was rendered by the court sustaining the demurrer. (*Franklin County* v. *Blake,* 257 Ill. 354.) The case was again redocketed in the Franklin county circuit court, and at the February, 1917, term thereof a final order was entered sustaining a demurrer to and dismissing the information. This writ of error has been sued out to reverse said order or judgment.

The information avers that on or about August 17, 1857, more than fifty persons named, together with about two hundred other citizens of Franklin county not named, under and by authority of an act of the General Assembly passed in February, 1857, entered into a voluntary association under the name "Franklin County Agricultural Society," for the purpose of promoting agriculture, horticul-

ture, manufacturing, mechanics and household arts; that said society became and was a body corporate and politic, and was by said act authorized to hold real estate for the uses aforesaid and to promote the objects of said organization. The information avers that soon after its organization the society acquired title to certain real estate in said county, and from thence until 1900 held annually in said county agricultural fairs pursuant to the purpose·of the' organization; that on or about November 8, 1887, R. R. Link and wife sold to said society certain premises, (describing the same,) containing four acres, more or less, and being the premises here involved, which tract was purchased for the purpose of enlarging the grounds of said society; that · Link and wife conveyed the premises to W. L. Fitzgerrell as trustee, who on September 21, 1891, conveyed the premises to the society. The information avers the society went into possession of the premises upon the making of the deed to Fitzgerrell and used the same and held fairs thereon annually until 1900; that on August 31, 1901, the officers and directors of the society held a meeting and decided to abandon holding fairs and did on said day adjourn without day, since which time the society has failed and neglected to exercise any of its rights, duties or liabilities, and to occupy, use or control or dispose of said premises and has wholly abandoned the same. The information avers that more than five years have passed since the society has exercised any claim or control over the premises; that it has never sold the same and owes no debts, and that by reason of abandonment and non-user the premises have escheated to the county. The information averred that William B. Blake and others named as defendants claim to own some interest in the premises, and prays that an order issue commanding defendants to appear and show cause why the real estate in question should not be declared vested in Franklin county.

To the information were attached, as exhibits, copies of the deed from Link and wife to Fitzgerrell, trustee, dated

November 8, 1887; the deed from Fitzgerrell, trustee, to the Franklin County Agricultural Society; a copy of the minutes of the meeting August 31, 1901, at which it was decided to hold no more fairs, signed by the then president and secretary of the society; also a copy of quit-claim deed from John C. Westervelt and wife, dated February 27, 1902, to William B. Blake and William H. Hart, as trustees; a quit-claim deed from Eliza J. Link, widow and executrix of the estate of R. R. Link, deceased, dated February 6, 1904, quit-claiming her interest in the lands in controversy to said trustees, Blake and Hart, and other deeds from said trustees to the parties defendant showing the chain by which they claim title.

In support of the judgment of the circuit court in sustaining the demurrer and dismissing the information, defendants in error contend that the information does not sufficiently aver that the Franklin County Agricultural Society was a corporation; that if it was a mere voluntary association, and not a corporation, when it abandoned the purposes of its organization, its property became subject to distribution among its members as in case of the dissolution of a partnership. The principal and material question raised is whether, if the society was a corporation and was dissolved by reason of non-user and abandonment, its abandoned real estate escheated to the county or reverted to the original owner from whom the corporation derived title.

We are of opinion the information sufficiently avers the society was a corporation. Section 1 of the act of 1857, under which it was organized, provides that an agricultural society may be formed in any county by not less than twenty legal voters, who may organize under a constitution and by-laws of their own construction, which they may alter or amend at pleasure. Section 2 provides that a society so organized may thereupon be constituted a body corporate and politic under an appropriate name, which name, together with that of the president, secretary and treasurer,

shall be recorded on the books of the county clerk, whereupon the society shall be deemed legally constituted and authorized to contract, sue and be sued and purchase and hold real estate for the use of and to promote the objects of the society, not exceeding five hundred acres at any one time. The information alleged the organization of the Franklin County Agricultural Society for the promotion of agriculture, horticulture, manufacturing, mechanics and household arts and that it became and was a body corporate and politic. This was a sufficient averment that it was a corporation. The primary purpose of such corporations is not the pecuniary profit of its members but the promotion of public benefits, so that in its essential elements it is a charitable corporation, and in our opinion the rules governing the property of such corporations should be applied in this case.

The common law rule that the real estate of corporations remaining unsold upon dissolution reverted to the original grantor or his heirs, was, at least as to corporations for pecuniary profit, never based upon reason or justice and has long since become obsolete as to such corporations, (10 Cyc. 1327,) but the rule is still applied, under certain circumstances and conditions, as to the property of charitable corporations or corporations of a public character not organized for pecuniary profit of its members. A distinction is made between property donated to aid in carrying out the objects of the corporation and property acquired from the owner by purchase, for which reasonable value is paid. It would seem there is a logical and just basis for such distinction. Where the owner donates land to aid a corporation organized for a charitable or public purpose to carry out its objects, when the corporation ceases to carry out the purposes of its organization and has no further use for the land it is reasonable and just that it should revert to the donor, but where land is bought by such corporation and its value paid the owner we can see no more reason

why it should revert to the grantor than land purchased by a trading corporation.

The cases in this State where it has been held that on the dissolution or civil death of an eleemosynary corporation its real estate reverted to the grantor or his heirs are all cases, we believe, where the land was donated by the grantor. (*Mott* v. *Danville Seminary*, 129 Ill. 403; *Miller* v. *Riddle*, 227 id. 53; *Presbyterian Church* v. *Venable*, 159 id. 215.) In *North* v. *Graham*, 235 Ill. 178, the deed to the society contained a provision that when the land ceased to be used for a church-house site it should revert. Whether the same rule would apply to land purchased and paid for by the corporation has not, we believe, been passed upon in this State. We can see no more reason why property which the owner has sold to a corporation not organized for profit and received payment for should upon the dissolution or civil death of the corporation revert to him than in the case of a corporation organized for profit, and it is now universally held that in this latter case there is no reversion to the grantor. The question was elaborately discussed in what to our minds is an able and logical opinion of the Supreme Court of South Carolina in *McAlhaney* v. *Murray*, 89 S. C. 440, also reported in 26 Am. & Eng. Ann. Cas. 1008. In that case the corporation was a social and benevolent organization as distinguished from a trading corporation. It bought and paid for a lot, on which it erected a building in which to hold meetings. When the war of the rebellion came on it disbanded, most of its members enlisting in the army. Years afterward a controversy arose over the ownership of the property, it being asserted by the daughter of the man who sold the lot to the corporation, he being then dead, that it reverted to her as heir of the grantor. The opinion treats the questions involved fully and at considerable length, and we take the liberty of quoting a paragraph from it: "There are some broad and obvious lines of difference between trading or business cor-

porations and eleemosynary corporations, but there is no such difference as makes reversion to the grantor of corporate real estate on dissolution of the corporation unjust and absurd in one case and fair and reasonable in the other. The difference that one kind of corporation issues shares of stock for the capital paid in and is conducted for the purpose of making money for its shareholders, while the other receives and invests money in buildings and lands or other property for the special benefit of a class or of the general public and issues no stock, is no logical basis for holding that the rule of the common law has become obsolete and odious in one case and not in the other. In rapidity of development, in variety of organization and of enterprise, the modern eleemosynary corporation has well nigh kept pace with the modern business corporation. In its development it has reached a point entirely out of the view and conception of jurists of Lord Coke's day. Incorporated hospitals, universities, colleges, churches, fraternal societies and social clubs buy land, construct expensive buildings and accumulate large endowments. The idea that upon the dissolution of such a corporation the land and buildings go to one who happened to be the person who conveyed the land to the corporation seems clearly as absurd and odious as it is antiquated. There is hardly any logical ground for rejecting the common law rule of reversion when considered with respect to business corporations, that does not apply with equal force when considered with respect to eleemosynary corporations." It was decided in that case that the property did not revert to the original owner or his heirs but that the members of the society whose contributions had bought the land and improved it were equitably entitled to it to the exclusion of the heirs of the grantor. That conclusion seems to us to be supported by reason and justice. In the case here under consideration, if there were any members of the society who had any equitable claims

upon the land in controversy, the property would be liable to satisfy such claims.

Section 1 of chapter 49 of Hurd's Statutes provides that when any person seized of real estate dies leaving no heirs capable of inheriting or devisees capable of holding the same, and in all cases where there is no owner of real estate capable of holding the same, it shall escheat to and vest in the county in which it or the greater portion is situated. By section 3 it is made the duty of the State's attorney, when informed that any real estate has escheated to the county by reason of the death of a person without devising the land and leaving no heir capable of inheriting and such estate shall not have been sold according to law within five years after the death of the person last seized for the payment of debts of the deceased, to file an information to have the land adjudged escheated to the county. The persons claiming the estate, if known, and terre-tenants, are to be made defendants and served with *scire facias*. The court is required to make an order briefly setting forth the contents of the information and requiring all persons interested in the estate to appear and show cause, if any they have, why the same should not be vested in the county, which order is required to be published six successive weeks in some newspaper published in the county before the commencement of the term of court at which the parties are notified to appear. By section 4 any person claiming an interest in the estate who is not named in the information may appear and be made a defendant and allowed to plead. Any person who was not served with *scire facias* and who did not appear in the proceeding may, within five years after judgment was rendered, file a petition in chancery and have his claims adjudicated. None of the members of the Franklin County Agricultural Society were named in the information or served with *scire facias* and none appeared and asked to be made parties. The information

avers that after the year 1900 the society abandoned holding fairs, and that at a meeting held August 31, 1901, by the officers and directors, they adjourned without day. A copy of the minutes of the meeting is attached to the information as an exhibit, which shows that the funds on hand at that time were distributed equally among the twelve directors, president and vice-president, giving to each $13.50, "balance to go to secretary for his work."

For the purposes of this case the question is to be considered as if there were no members of the society having any equitable claims against the land. In that event the land would escheat to the county or revert to the person from whom the society acquired it, or his heirs. Upon these questions we agree with the South Carolina court that "when all the equities are satisfied, the remainder of the property, if any, goes to the State, just as the property of an estate of an individual goes to the State when no one appears who has any just, legal or equitable claim to it." (See, also, *People* v. *President and Trustees of College of California,* 38 Cal. 166.) We can think of no reason why it is equitable or just that the heirs of the grantor should take this property. We must assume that the grantor was paid the reasonable value of the land. The consideration expressed in the deed from Link is $400 for the four acres of land. He having been paid full value was no more entitled to a reversion in this case than he would have been if he had sold the property to a corporation organized for profit or to an individual who died leaving no heirs or anyone capable of taking it. If in such cases the title reverted to the vendor there would be little use for our statute on escheats, for there would be no escheats.

We are of opinion the court erred in sustaining the demurrer, and the judgment is reversed and the cause remanded, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*